SWAN LAND & CATTLE Co., Limited, *v.* FRANK *et al.*

*(Circuit Court, N. D. Illinois.* July 22, 1889.)

1. CORPORATIONS—STOCKHOLDERS—ACTION AGAINST—PARTIES.

A bill against the stockholders of a certain corporation alleged that complainant, a corporation, had purchased all the assets and properties of defendants' corporation; that the vendor had fraudulently misrepresented the value of the property, and the defendants, as stockholders, had received their proportionate shares of the proceeds of the sale and the other assets of the company which came into their hands as a trust fund for the satisfaction of complainant's claims; and prayed that the defendants be required to account for and pay over so much of such assets as might be necessary to satisfy complainant's demands. *Held,* that as the action was primarily an action against the vendor corporation for damages for fraudulent representations, the corporation was a necessary party.

2. SAME—ABANDONMENT OF FRANCHISE.

Allegations in the bill that complainant purchased all of the property of the vendor corporation, and that since the sale the vendor had divided its assets among its stockholders, and ceased to exercise its franchise, furnishes no excuse for not making the vendor a party, as the corporation was not dissolved by mere non-use of its franchise, or by the want of assets.

3. SAME—NON-ELECTION OF OFFICERS.

Under Rev. St. Wyo (under which the vendor corporation was organized) § 560, failure to elect trustees on the day designated by the laws of the company did not dissolve the company, but the election might be held on a subsequent day, and the trustees held until their successors were elected. By the laws of Wyoming service of process could be made on the corporation by serving the same upon any of the trustees or officers, or by leaving a copy at the company's place of business. *Held,* that the allegations of the bill that the company had no officer or agent on whom service of process could be served, showed no valid reason why it could not be made a party.

4. SAME—EQUITY—JURISDICTION.

As the bill showed that the case was one appropriate for a trial at law, complainant should first establish at law, not only his right to damages against the vendor company, but also the amount of such damages.

5. SAME—PLEADING—AMENDMENT.

    As the bill is brought in a jurisdiction other than the district of which the vendor company was a resident, it cannot be amended so as to bring the company in as a defendant, and is fatally defective.

In Equity. On demurrer to bill.

*Swift, Campbell & Jones,* for complainant.

*Kraus, Mayer & Stein* and *J. W. Woolworth,* for defendants.

BLODGETT, J. This bill is now before the court upon a demurrer filed in behalf of all the defendants who have been served with process. The bill seeks relief against the defendants as stockholders in certain corporations organized under the laws of the territory of Wyoming. The bill avers that in November, 1882, there were existing and doing business in the territory of Wyoming three corporations organized under the laws of said territory, engaged in the business of breeding and dealing in cattle, known respectively as "The Swan & Frank Live-Stock Company," "The National Cattle Company," and "The Swan, Frank & Anthony Cattle Company." That on the 27th of November, 1882, said three companies joined in making a written contract with one James Wilson, of Edinburgh, Scotland, by which said companies agreed to sell to a limited company, to be thereafter incorporated under the laws of Great Britain and Ireland, by said Wilson and his associates, as promoters, for the sum of $2,553,825, all and singular the lands and tenements, possessory rights to lands and tenements, water-rights, improvements upon lands, houses, barns, stables, *corrals,* cattle, horses, and mules belonging to said three Wyoming corporations, or any or either of them; also the live-stock brands, tools, implements, wagons, harnesses, ranch, camp and round-up outfits, and branding irons belonging to said Wyoming corporations, or any or either of them, which said lands and tenements, possessory rights, goods and chattels, and live-stock, were particularly enumerated and described in certain inventories annexed to said written agreement, and made a part thereof. That said contract contained, among other provisions, the following covenant:

"And it is further agreed on the part of the said first parties, as to all livestock mentioned and described in said inventories, that said first parties shall and do hereby agree and guaranty to and with said second party that the herd-books of said first parties, showing the acquisition, increase, disposition of, and number of cattle now on hand, of the said first parties, respectively, have been truly and correctly kept."

That after making said contract, Wilson proceeded to Scotland, and there succeeded in organizing the complainant company, a limited liability company, as contemplated in said contract, under the laws of Great Britain and Ireland, and secured subscription for and payment into the complainant company of sufficient capital stock to consummate the said contract; and that some time in April, 1883, the full purchase price called for by the Wilson contract, less certain agreed deductions for expenses, etc., was paid to the three vendor companies, and bills of sale and deeds for the property of the vendors were delivered to the com-

plainant, and complainant thereupon took possession of the property so transferred to it by the vendors.

It is also alleged in the bill that the vendor companies represented to the complainant in the bill, and to the promoters of the complainant company, and to the shareholders of the complainant company, that it was impossible to count the cattle which the vendor companies agreed to sell the complainant, and that the complainant would be obliged to take possession of the same wherever they might be ranging, without any count whatever, and without any other or further act on the part of the vendors than the delivery of the bills of sale and deeds; that complainant, relying upon the representations made by the vendors that the inventories attached to and made a part of said agreement of sale, and upon the representations of the vendors that the death losses in their herds were made good by the number of calves which escaped branding at the regular branding season, and their further representation that they undoubtedly had the full number of 89,167 head of cattle in their said herd, and relying upon the joint guaranty of the vendors that their herd-books truly and correctly showed the number of cattle then on hand, and upon the guaranty that the calf brands of the year 1883 would amount to 17,868 calves, and fully believing, as stated by the vendors, that it was impossible to count said cattle, complainant consented to receive delivery of said cattle, and did receive the same without any count, and take the same wherever they were ranging, without any other act on the part of the vendors than the delivery of said papers by the vendors.

The bill further states that one Alexander H. Swan was the active agent of the vendor companies in the negotiation and consummation of said sale to the complainant; that Swan was connected with all the vendor companies as a stockholder, and was an officer in all of them; that he had had large experience in the management of such properties, and that by reason of said Swan's knowledge of said properties and the business of the vendor companies, the complainant made an agreement with him to continue in charge of said herd, as manager for complainant, at a large salary; and that Swan at once, after said purchase was consummated by complainant, took charge of said herds and all the said ranch property, as manager for complainant, and continued to be such manager until a very recent date before the filing of this bill. It is further averred that Swan, as such manager, reported to complainant that 17,-932 calves were actually branded at the branding season of the year 1883, and further says that said report was false, and intentionally made so in order to deceive and defraud the complainant.

The bill further says that complainant has now learned "that the representations made by the vendors that they had 89,167 head of cattle to sell to complainant were grossly untrue, and the representations made by said vendors that the number of calves in their herd which escaped branding at the regular branding season was sufficient to offset the death losses in said herd were also grossly untrue," and avers that the fact that said representations were untrue was known to the vendors, and that the

vendors were unwilling to have said cattle counted at the time such purchase was consummated, because they well knew that such count would show that they did not have the number of cattle that they purported to have and agreed to sell. And the bill further avers that there were at least 30,000 head of cattle less in the herds sold to complainant than the vendors represented themselves to have, and that complainant has suffered damage in consequence of such deficiency, and in consequence of the misrepresentation of the vendors, to the amount of at least $800,000. It is also further charged in the bill that the vendors had no other assets, or substantially none, except the property sold by them to complainant, and that after the sale of their said properties to the complainant, and the receipt by them of the purchase price, the three vendor companies paid whatever liabilities they had outstanding, except their liability to complainant, herein set forth, and distributed the money and stock obtained from complainant as the proceeds of said sale, and all their other assets among the respective shareholders, and the same were received by said shareholders; and since that time said three corporations have not, nor has either of them, made any use whatever of their franchises, but they have abandoned the same; and neither of said corporations has any officer or agent upon whom process can be served. That they have not, nor has either of them, any assets of any kind out of which any judgment at common law against them, or either of them, could be satisfied. That the assets of said corporations were in the hands of the vendor corporations a trust fund to satisfy the claims of the complainant, as set forth in its bill, before the shareholders of said vendor corporation were entitled to receive any portion of the same; and said shareholders, in taking and receiving said assets, took and now hold the same as trustees in place of the corporation, subject to the lien of the complainant's aforesaid claim for damages. That all the defendants in this bill were shareholders in some one or more of the vendor corporations, and received their proper shares of said assets when said assets were distributed, as aforesaid.

The bill states that the complainant has made defendants thereto all the shareholders of the vendor corporation who reside within this district. The prayer of the bill is, that each and every of the defendants shall, by a decree of the court, be required to account for and pay over, as the court may direct, to complainant, in satisfaction of complainant's damages, so much of the assets of said respective corporations as may be necessary to satisfy complainant's demand. Neither of the original vendor corporations are made parties to this bill, nor is it claimed that all the stockholders in said corporations are made parties, but only such stockholders as are within this district.

The bill is demurred to, mainly on two grounds: *First*, that the vendor corporations are necessary and indispensable parties to this suit; *second*, that no judgment at law has been obtained against said vendor corporations for the amount of damage which complainant alleges it has sustained by reason of a breach of the covenants, or the misrepresentations set out in this bill.

It is true that complainant seeks by the averment that said vendor corporations, having abandoned their corporate franchise, have no officer or agent on whom process can be served, to excuse itself for not making the corporations parties defendant, and perhaps it may be said that they intend also to excuse themselves thereby for not having obtained judgment at law against the vendor corporations; but the averment that the vendor corporations have distributed their assets among the stockholders, and ceased to make any use of their franchise, is not equivalent to an averment of the dissolution of the corporation. The law is well settled that a corporation is not dissolved by the non-use of its franchise, or by the want of assets. *Bank* v. *Bank*, 14 Wall. 383; *Bank* v. *Insurance Co.*, 104 U. S. 54. The rule was undoubtedly correctly laid down in *Glass Manufactory* v. *Langdon*, 24 Pick. 49, where it is said:

"The possession of property is not essential to the existence of a corporation. Its insolvency cannot, therefore, extinguish its legal existence. * * * The omission to choose directors clearly does not show the dissolution of the corporation. Although the proper officers may be necessary to enable the body to act, yet they are not essential to its vitality. Even the want of officers, and the want of power to elect them, would not be fatal to its existence. It has a potentiality which might by proper authority be called into action without affecting the identity of the corporate body."

By the laws of Wyoming, under which these vendor corporations were organized, "failure to elect trustees on the day designated by the laws of a company does not dissolve the corporation, but an election may be held on another day, and the acts of trustees are binding until their successors are elected," (Rev. St. Wyo. § 560,) and service of process could be made on such corporations by the laws of Wyoming by serving the same upon any of the trustees or officers, or by leaving a copy at the usual place of business of such corporation, so that there is nothing in the bill showing any valid reason in law why the corporations cannot be made parties to the controversy set out in this bill, if the suit is brought within the proper jurisdiction. That these vendor corporations are not only necessary, but indispensable, parties to this controversy it seems to me can hardly admit of a doubt, upon the statements made by the bill. It will be noticed that all the claims which the complainant seeks to enforce against the defendants as stockholders of these corporations are claims sounding in damages which have accrued by reason of the alleged breach on the part of the vendor corporations of their covenants in regard to the number of cattle upon their respective ranches, and their misrepresentations in regard to the present and prospective value and profits of their property, as set forth at length in the bill, many of which I have not quoted. As the case stated in the bill is one sounding wholly in damages, it is one peculiarly appropriate to the jurisdiction of a court of law. It is a case for damages primarily against the vendor corporations, and the defendants in this case are only sought to be made secondarily liable by reason of the fact that they are charged with having possession of certain assets of the vendor corporations out of which it is insisted complainant's damages should be satisfied; but it seems to me that the first step is

to establish a claim against these vendor corporations. The complainants are, in effect, by this bill seeking to compel these defendant stockholders to try a case in this court against corporations who are not parties to the suit. The first and fundamental question in the complainant's case is, has there been a breach of the covenants of these vendor corporations, and what amount of damage has the complainant sustained by reason of such breach? It would be anomalous and unjust, it seems to me, to try this question in a suit to which the corporations were not parties, and where they could not be heard.

The case made by the bill is one peculiarly, if not exclusively, appropriate for a trial by a court of law. The extent of the shortage in the cattle sold complainant, and the value of those cattle, is a matter which, it seems to me, these defendants have the right to demand should be inquired of and adjudicated upon by a court of law. Indeed, it may well be doubted whether any court of equity should take jurisdiction of the controversy as stated in the bill. In Story's Equity Jurisprudence, (volume 1, § 72,) it is said:

"If, therefore, the proper relief be by an award of damages, which can alone be ascertained by a jury, there may be strong reasons for declining the exercise of the jurisdiction, since it is the proper function of a court of law to superintend such trials."

And in many other cases where the question arises purely on matters of fact fit to be tried by a jury, and the relief is dependent upon that question, there is equal reason that the jurisdiction for relief should be altogether declined. I am therefore of opinion that the demurrer to this bill is well taken, upon the ground that the complainant should first establish by a suit at law, not only the fact that it has a claim for damages against these defendant corporations, but the amount of such damages, and, even if I am in error upon this point, and if a court of equity can, with the proper parties before it, administer the relief which the complainant seeks in this bill, without the damages first having been ascertained and determined by a suit at law, still, there can be no doubt, I think, in the light of the authorities, that the vendor corporations are necessary and indispensable parties to such bill. *Kendig* v. *Dean*, 97 U. S. 423; *Wood* v. *Dummer*, 3 Mason, 308, *Lyman* v. *Bonney*, 101 Mass. 562; *Patterson* v. *Lynde*, 112 Ill. 196; *Bank* v. *Smith*, 6 Fed. Rep. 215. As I have already said, the complainant, by the bill as now framed, seeks to compel the defendants, who are not the vendor corporations, to try, in effect, a suit against the vendor corporations where the claim sounds wholly in damages. These defendants are not supposed to have within their possession or control either the facts upon which the corporations themselves might base a defense or upon which the damages could be measured and determined. The books, papers, vouchers, original contracts, everything which would be material to the settlement of the rights of the complainant against these vendor corporations must be supposed to be in the hands of the vendor corporations, or some of their officers, and not in the hands of either of these defendants by reason of the mere fact of their being stockholders. These vendor corporations, being Wy-

oming corporations, cannot be brought into this court, and hence the bill is not only fatally defective, as it stands, but cannot be amended in that respect. The demurrer is therefore sustained and the bill dismissed.