## BANK OF BETHEL v. PAHQUIOQUE BANK.

1. A National banking association may be sued in any state, county, or municipal court in the county or city where such association is located, having jurisdiction in similar cases.
2. Such an association does not lose its corporate existence by mere default in paying its circulating notes, and upon the mere appointment of a receiver.
3. Such an association may be sued though a receiver have been appointed, and is administering its concerns.
4. The decision of the receiver upon the validity of a claim presented to him for a dividend is not final; the creditor may proceed afterwards to have the validity of the claim judicially adjudicated in a suit in a proper State court, against the bank.

IN error to the Supreme Court of Connecticut; the case being thus:

On the 3d of June, 1864, Congress passed its well-known "act to provide a National currency, secured by a pledge of United States bonds;"* under which act numerous new

---

* 13 Stat. at Large, 99.

banks were organized, and numerous State ones, availing themselves of power given by the act, were converted into National ones, and like those first created by the act placed under the control of the laws and officers of the United States, including specially a Comptroller of the Currency, under whose directions a limited amount of notes were to be given to the banks; these notes being the only ones that the banks could issue.

The act, after providing for the mode in which the new banks were to be organized under articles of association, enacts:

SECTION 8. That every association formed pursuant to its provisions shall "be a body corporate," and "*have succession* by the name designated in its organization certificate *for a period of twenty years.* from its organization, unless sooner dissolved.

(1st.) According to the provisions of its articles of association, OR,

(2d.) By the act of its shareholders, owning two-thirds of its stock, OR,

(3d.) *Unless the franchise shall be forfeited by a violation of this act."*

"By such name," continues the section, "it may sue and be sued, complain and defend as fully as natural persons."

The 32d section, after enacting that all the banks in certain cities of the United States shall redeem their circulating notes at par in New York, provides:

"That nothing in this section shall relieve any association from its liability to redeem its circulating notes at its own counter, at par, in lawful money on demand."

The 46th section enacts:

"That if any such association shall, at any time, fail to redeem in the lawful money of the United States any of its circulating notes when payment thereof shall be lawfully demanded . . . . the holder may cause the same to be protested, in one package, by a notary public, . . . and such notary public on making such protest or upon receiving such admission shall forthwith forward such admission, or notice of protest, to the Comptroller

of the Currency. . . . And after such *default*, . . . it shall not be lawful for the association suffering the same to pay out any of its notes, discount any of its notes, or otherwise prosecute the business of banking, except to receive and safely keep money belonging to it, and to deliver special deposits."

The 50th section enacts:

"That on becoming satisfied, as specified in this act, that any association has refused to pay its circulating notes as therein mentioned and is in default, the Comptroller of the Currency may forthwith appoin , a receiver . . . who . . . shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to such association, and upon the order of a court of competent jurisdiction may sell or compound all bad or doubtful debts, and on a like order sell all the real and personal property of such association, on such terms as the court shall direct. . . . And such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the comptroller. . . . And from time, to time the comptroller, after full provision shall have been first made for refunding, &c., . . . shall make a ratable dividend of the money so paid over to him on all such claims as may have been proved to his satisfaction, or *adjudicated in a court of competent jurisdiction.*"

A proviso to this section says, however,

"That if such association against which proceedings have been so instituted on account of any alleged refusal to redeem its circulating notes as aforesaid, shall deny having failed to do so, such association may . . . apply to the nearest circuit or district or territorial court of the United States to enjoin further proceedings in the premises, and such court . . . after the decision of the court or the finding of a jury that such association has *not* refused to redeem its circulating notes . . . shall make an order enjoining the comptroller or any receiver from all further proceedings on account of such alleged refusal."

The 45th section enacts:

"That all associations under this act when designated for that purpose by the Secretary of the Treasury, shall be depositories of the public money (except receipts from customs), under such

regulations as may be prescribed by the secretary; and they may also be employed as financial agents of the government; and they shall perform all such reasonable duties as depositories of the public moneys and financial agents of the government as shall be required of them."

The 52d section enacts:

"That all transfer of the notes, bonds, bills of exchange, and other evidences of debt owing to any association, or of any deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or *creditors;* and all payments of money for either, made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by this act, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void."

The 53d section enacts:

"That if the directors of any association shall knowingly violate or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this act, all the rights, privileges, and franchises of the association derived from this act shall be thereby forfeited. *Such violation shall, however, be determined and adjudged by a proper circuit, district, or territorial court of the United States, in a suit brought for that purpose* by the Comptroller of the Currency, in his own name, before the association shall be dissolved."

The 57th section (and this is an important one to be noted in the case) enacts:

"That suits, actions, and proceedings against any association, under this act, may be had in any circuit, district, or territorial court of the United States, held within the district in which such association may be established; *or in any state, county, or municipal court in the county or city in which said association is located; having jurisdiction in similar cases.* Provided, however, that all proceedings to *enjoin* the comptroller under this act shall be had in a circuit, district, or territorial court of the

United States, held in the district in which the association is located."

In this state of statutory law about National banks, the First National Bank of Bethel, in Connecticut, on the 21st of February, 1868, failed to redeem some of its circulating notes. They were protested, and on the 26th of February a receiver was appointed under the above-quoted 50th section of the Currency Act, who immediately entered on the duties of his office.

The National Pahquioque Bank of Danbury, Fairfield County, in the same State, asserted that it was a creditor of the Bethel Bank, and presented its claim to the receiver. The receiver, however, disallowed it.

The Pahquioque Bank thereupon, on the 30th of May, 1868, brought assumpsit in the Superior Court of Fairfield County, a court of Connecticut having jurisdiction in similar cases, against the Bethel Bank. The Bank of Bethel defended itself against the claim on these, in substance, among other grounds:

1. That the courts of the United States alone had jurisdiction after the appointment and acceptance of the receiver.

2. That prior to the suit brought the Bank of Bethel had forfeited its charter by a violation of the Currency Act, in not paying its notes, and could not be sued anywhere.

3. That it could not be sued because it was, at the time, under the control and in possession of a duly appointed receiver, "incapable of self-defence, and entitled to the legal protection and guardianship thrown about it by the law."

4. That the decision of the receiver on the presentation of the claim was conclusive on the parties to the suit as an adjudication, unless set aside by the Comptroller of the Currency, or by some court of the United States having jurisdiction.

But the court gave judgment for the Pahquioque Bank for the full amount of its claim. The Bethel Bank then took the case on error before the Supreme Court of the State, where the judgment of the Superior Court of Fair-

field County was affirmed. To review this final judgment of the Supreme Court this writ of error was brought.

*Messrs. C. B. Goodrich, Roger Averill, and L. D. Brewster, for the Bank of Bethel, plaintiff in error:*

1. The National banks, under the act of 3d June, 1864, have been established as instruments by which the government may perform some of its trusts. They are controlled by the Treasury department. They are allowed to receive from the Comptroller of the Currency notes which they may circulate as money. They cannot issue any instrument for circulation or use as money, or as a substitute for money, except the notes intrusted to them by the comptroller. Their existence, as bodies corporate, can be sustained under the Constitution, only, because they may be employed by the government in the execution of its functions. The act imposes upon the Comptroller of the Currency certain duties of a public character, to perform which he is clothed with certain powers. The legality and propriety of the supervision and control which is exercised by the Comptroller of the Currency of the United States over National banking associations, and the effect of his acts in relation thereto, are to be determined, *exclusively*, by the laws of the United States; the construction of which is ultimately to be given by the courts of the United States. The suit brought in the Superior Court of Fairfield County, a State court of Connecticut, was thus brought in a court without jurisdiction.

2. An association under the act is to have succession (that is to say, corporate existence) for the period of twenty years from its organization, *unless the franchise* (which consists in a right of banking) *shall be forfeited by a violation of the act.* Now the Bank of Bethel committed a violation of the act, a "default," as the act itself calls it, on the 21st of February, 1868, at which time it failed to redeem some of its circulating notes; which failure was duly ascertained by the Comptroller of the Currency, who, on the 26th of February, acted thereupon, by the appointment of a receiver. This action of the comptroller was not enjoined by any District, Circuit,

or Territorial Court of the United States; the only courts competent to enjoin or act in the matter. The result is that the power of succession (corporate capacity) ceased to exist prior to the 30th May, 1868, on which day the Pahquioque Bank instituted their suit. The association was dissolved; the receiver was clothed with power to reduce the assets to money, by suit in his own name; was directed to pay the money to the Treasurer of the United States, subject to the order of the Comptroller of the Currency, for the use of those entitled as creditors, giving priority of payment to the United States; the remainder or surplus of the proceeds, after the payment of debts, to be paid by the comptroller to the shareholders of the association or their legal representatives, in proportion to the stock by them respectively held, and not to the association in its corporate capacity.

3. On the 30th May, 1868, on which day the Pahquioque Bank commenced its suit, the Bank of Bethel had no authority to pay, was prohibited from paying, any creditor; it had no means within its control with which to pay. If the bank had authority, after notice by the comptroller, to pay a creditor, it might by such payment defeat the provision of the act which gives to the United States, from the assets of the association, priority of payment for any deficiency in the redemption of its circulating notes after applying the bonds deposited for their redemption. It results, from the want of authority to pay a creditor, at the time the suit by the Pahquioque Bank was instituted, that no suit at law, in any court, State or National, could be instituted against the Bank of Bethel.* If one creditor, after the appointment of a receiver, may institute a suit in a court of law, every creditor can, and by such course of proceeding disregard the winding up under the direction of the comptroller.

4. After an association has been placed in the hands of a receiver, the statute prescribes the mode of *winding up*, which includes an ascertainment of the creditors, and the amount severally due to them. This mode of proof excludes all

---

* Atlas Bank *v.* Nahant Bank, 23 Pickering, 480; Hubbard *v.* Hamilton Bank, 7 Metcalf 340.

others.   This cannot be doubted, except by holding that the act conferring authority upon the Comptroller of the Currency to appoint a receiver, to receive proof of claims, to wind up the affairs of the corporation, is unconstitutional.

*Messrs. W. F. Taylor and O. S. Seymour, contra:*

1. The whole argument against the jurisdiction of State courts is answered by the 57th section of the act which in cases like that where the Pahquioque Bank sued, gives the jurisdiction in express words to "any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases."

2. The association does not become extinct, *ipso facto,* by the appointment of a receiver.   The 50th section speaks of it as existing.   The powers of the receiver may be superseded, if the bank shows that it did not fail to redeem its notes. Default in paying notes only curtails its privileges.   But even if it were a cause for forfeiture, still by the undoubted rules of the common law and by the express provisions of the 59th section of the act, a judgment of forfeiture by a judicial tribunal is necessary, and the corporate existence continues till such judgment is had.   Questions of forfeiture cannot be tried in a collateral way.   The only evidence which the law admits is the copy of the judgment of forfeiture, by a competent tribunal, in a proceeding instituted directly for the purpose of an adjudication of forfeiture.

3. A judgment by a State or other court, for a sum of money (such a judgment was given in the courts below), does not take things out of the receiver's hands.   It does not interfere with any duties which the Currency Act imposes on him.   It merely ascertains the justice of a claim and fixes its amount.   Payment of the claim can be made only in subordination to the Currency Act.   No number of judgments would prevent "the winding up under the direction of the comptroller."   The only result is that the claim being "adjudicated by a court of competent jurisdiction" the creditor under it comes in for a dividend.

Then is the disallowance by the receiver of the claim pre-

sented to him before the judicial adjudication, a decisive adjudication of that claim? Certainly not. The comptroller and receiver are not judges of the United States. They cannot hold a court, summon a jury, compel the appearance of witnesses, or swear witnesses if they should appear. Every citizen of the republic may of common right appeal to a judicial tribunal for the adjudication of his rights. The right of trial by jury is secured by the Constitution to controversies of the character of that between these two banks, and the right of trial by jury implies that the controversy may be brought before a court that has power to summon a jury. There is in the act no provision for the establishment of a special tribunal to adjudicate claims against the insolvent bank. The failure to make any, leaves their adjudication to the courts in the ordinary course and manner of settling disputed claims. This would be the necessary inference from mere silence, and is confirmed and established by the provision in the 50th section, that the comptroller is to make a ratable dividend " on all such claims as may have been proved to his satisfaction or *adjudicated in a court of competent jurisdiction.*"

Mr. Justice CLIFFORD delivered the opinion of the court.

Associations for banking, formed pursuant to the act to provide a National currency, and duly authorized by the Comptroller of the Currency to commence the business of banking, become bodies corporate and have a succession for the period of twenty years from their organization, unless sooner dissolved according to the provisions of their articles of association, or by the act of the shareholders owning two-thirds of the stock, or unless the franchise shall be forfeited by a violation of the act under which the association was formed. Such an association is allowed to select, subject to certain conditions and the approval of the Comptroller of the Currency, another such association at which it will redeem its circulating notes at par, but the provision is that nothing in that section shall relieve any such association from its liability to redeem its notes in circulation at its own counter, at par, in

lawful money, on demand; and in case of failure so to do, the holder may cause the same to be protested in one package by a notary public, unless the president or cashier of the association which issued the notes, or the president or cashier of the association designated as the place for redeeming the same, will waive demand and notice of protest and execute an admission in writing stating the amount demanded and the fact of non-payment, and it is made the duty of the notary forthwith to forward the admission or notice of protest, as the case may be, to the Comptroller of the Currency for his information and action in the premises.

Notes to a large amount, issued by the corporation defendants for circulation, were held by the corporation plaintiffs, and the plaintiffs presented the same to the defendants for redemption, and the defendants failing to redeem the same, the plaintiffs offered the notes for protest, but the defendants having waived demand and notice of protest, and having tendered an admission in writing stating the amount demanded and the fact of non-payment, the plaintiffs accepted the written admission, and the notary forwarded the same to the Comptroller of the Currency as required under such circumstances. Pursuant to the requirement of law the Comptroller of the Currency appointed a special agent to ascertain whether the facts set forth in the protest were true, and the agent so appointed having reported that the defendants had failed to redeem in lawful money their circulating notes when payment thereof was duly and lawfully demanded, he, the Comptroller of the Currency, appointed a receiver of the delinquent association, with all the powers, duties, and responsibilities given to or imposed upon such an appointee in such case made and provided, and the record shows that the receiver entered upon the duties of his office and took possession of all the books, records, and assets, real and personal, of the association; and that he has ever since had the exclusive possession of the same, to be disposed of according to law. Before the commencement of the suit the Comptroller of the Currency caused notice to be published requiring all claimants to present and make proof

of their claims against the delinquent association, and the record also shows that the plaintiffs presented the claim in controversy to the receiver for allowance, and that the receiver having disallowed the same, the plaintiffs instituted the present suit in the State court to recover the amount.   Appropriate proceedings followed, as in an action of assumpsit, and the parties having been heard the subordinate court where the suit was brought made a finding of facts, but reserved the question whether the case ought to be dismissed for want of jurisdiction, and if not, what judgment ought to be rendered in the case, and all questions of law arising upon the facts found, for the opinion and advice of the Supreme Court of Errors.   Proper measures were adopted to obtain the opinion and advice of the appellate tribunal, and they were duly received, and thereupon the subordinate court rendered judgment in favor of the plaintiffs for the whole amount claimed in the declaration.   Proceedings in the nature of a writ of error were instituted by the defendants, by which the cause was removed into the Supreme Court of Errors, where the parties were again heard and the decision of the Court of Errors was that the judgment should be in all things affirmed.   Final judgment having been rendered in the State court, the defendants sued out a writ of error under the twenty-fifth section of the Judiciary Act and removed the cause into this court.

Four only of the errors assigned will be examined, as the others, in the view of the case taken by the court, either involve substantially the same considerations or present questions not re-examinable in this court under a writ of error to a State court.   Briefly stated the errors assigned to be examined are as follows:

(1.) That the State court had no jurisdiction of the case or of the parties at the time the suit was commenced.

(2.) That the defendant association prior to the institution of the suit had forfeited its franchise by a violation of the act under which it was formed and had been dissolved by the action of the Comptroller of the Currency.

(3.) That the defendant association could not be impleaded

at the time the action was commenced, as prior to that time the association was prohibited by the act of Congress from paying or satisfying any of its creditors.

(4.) That the decision of the receiver disallowing the claim of the plaintiffs was final and was not subject to review in the State court.

Support to the first proposition is supposed to be derived from the conceded fact that such associations are created by an act of Congress and that they are instruments of the National government intrusted with the power of carrying on the business of banking and of employing and circulating treasury notes as a National currency, subject to the supervision and direction of the Comptroller of the Currency and of the Secretary of the Treasury. Banking associations, it is said, were established as instruments by which the government may perform the trust of furnishing and regulating the National paper currency, and the argument is that inasmuch as they are instruments of the government to carry into effect a National purpose they cannot be impleaded in a State court. Confirmation of that view is also attempted to be drawn from the fact that such associations are controlled by the Treasury Department, that all the notes which they circulate as money are received from the Comptroller of the Currency, and that they cannot issue any instrument for circulation or use as money except the notes intrusted to them by the Comptroller of the Currency, as authorized by the act of Congress.

Beyond all doubt such associations are created by an act of Congress and for the purposes assumed by the defendants, but the conclusion attempted to be drawn from those facts cannot be sustained, as express provision is made by the fifty-seventh section of the act that suits, actions, and proceedings against any such association may be had " in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases." Commenced as the action was in the proper court of the State where the association is located and in a court having jurisdiction in similar cases, which is not de-

nied, it is quite clear that the objection to the jurisdiction of the court founded upon the character of the association as an instrument of the National government, must be over-ruled. Jurisdiction in such suits is unquestionably vested in any circuit, district, or territorial court of the United States held within the district in which such association may be established, but the decisive answer to the objection of the defendants is that the same section of the act of Congress gives authority to creditors to prosecute such controversies in "any state, county, or municipal court in which said association is located" in all cases where it appears that such courts have jurisdiction under the State laws in similar controversies. Proceedings to enjoin the Comptroller of the Currency under that act must, it is true, be instituted and prosecuted in a circuit, district, or territorial court of the United States, but the act allows creditors to sue in the proper State courts in all suits, actions, and proceedings against the association, as specifically provided in the fifty-seventh section of the act. Authorities to support the proposition are not necessary, as it rests upon an express provision in the act of Congress.*

II. Associations of the kind have a succession for the period of twenty years from their organization, unless sooner dissolved in some one of the modes pointed out in the act under which such associations are formed, and throughout that period, unless sooner dissolved, they may make contracts in the name designated in their organization-certificate and may sue and be sued or complain and defend in any court of law or equity as fully as natural persons. Such corporate franchises cease to exist when the term for which they were granted expires, and the association may at any time go into liquidation and be closed by the vote of its shareholders owning two-thirds of the stock, but it is not necessary to remark upon those topics, as it is not pretended that the defendant association has ceased to exist or been dissolved in either of those modes. All such associations

---

* 13 Stat. at Large, 116.

are bound to redeem their circulating notes either at their own counter or at such other similar association as they are allowed to select for that purpose, and the provision is that if any association shall fail either to make the selection or to redeem its notes as required, the Comptroller of the Currency may, upon receiving satisfactory evidence thereof, appoint a receiver, in the manner provided in the act, to wind up its affairs.    Holders of the circulating notes of such an association may demand payment thereof at the office of such association or at its place of redemption designated as aforesaid, and if the association fail to redeem the same in lawful money they may cause the same to be protested, as before explained, and the notary on making such protest or upon receiving such admission, shall forthwith forward the same to the Comptroller of the Currency for his information and action in the premises.    Being informed of the default of the association in that mode, it is made the duty of the comptroller to make an examination into the facts, and if satisfied that the default has been committed, to give notice to the association; and the same section provides that from that time it shall not be lawful for the association suffering the default to pay out any of its notes, discount any notes or bills, or otherwise prosecute the business of banking, except to receive and safely keep money belonging to it and to deliver special deposits.    On receiving such notice the Comptroller of the Currency, with the concurrence of the Secretary of the Treasury, may appoint a special agent to examine into the facts of the case, and if satisfied from the protest or the report of the special agent that the charge of default as made is true, he shall, within thirty days, declare the bonds and securities pledged by the association forfeited and give notice to the holders of the circulating notes to present the same for payment at the treasury, and the provision is that in that event he may in his discretion cause an amount of the bonds pledged, equal at current rates to the amount paid to redeem the outstanding notes of the association, or he may cause such an amount of the bonds pledged as may be necessary to redeem the outstanding notes, to be sold at

public auction; or, if he shall be of the opinion that the pub-
lic interest will be best promoted thereby, he may sell at pri-
vate sale any of the bonds so pledged and receive therefor
either money or the circulating notes of such failing associa-
tion.   Power is also conferred upon the Comptroller of the
Currency in such a case forthwith to appoint a receiver to
take possession of the books, records, and assets of every
description of the association and to collect all debts due
and claims belonging to it, and upon the order of a court of
record of competent jurisdiction he may sell or compound
all bad or doubtful debts and may sell all the real and per-
sonal property of the association on such terms as the court
shall direct, and may, if necessary to pay the debts of the
association, enforce the individual liability of the stockhold-
ers, as enacted by the twelfth section of the act.   All moneys
so made by the receiver he is to pay over to the Treasurer
of the United States, subject to the order of the Comptroller
of the Currency, and he is also to make report to that officer
of all his acts and proceedings.   Receivers may also be ap-
pointed for other causes than those already mentioned; as,
for example, in case the money reserve which the association
is required to have on hand shall fall below the prescribed
amount, and when notified to make it good the association
shall fail for thirty days to comply with the requirement, or
shall fail for thirty days to increase the capital stock of the
association to the minimum amount required, where the
same has been reduced below that amount by the delin-
quency of the shareholders and consequent sale and reduc-
tion of the stock; or, in case any such association which is
required to keep undiminished the twenty per centum sur-
plus mentioned in the twelfth section of the act, shall fail to
keep it good, in which event the provision is that the Comp-
troller of the Currency may compel said banking association
to close its business and wind up its affairs, as provided in
the act under which it was organized.   Whenever a receiver
is appointed the comptroller is required to give notice of the
fact, requesting all persons having claims against the associa-
tion to present the same and to make legal proof thereof.

Provision is first to be made by the comptroller for refunding to the United States any such deficiency in redeeming the notes of the association as is mentioned in the act, and having refunded that amount the comptroller is required in the next place to make a ratable dividend of the money paid over to him by the receiver on all such claims as may have been proved to his satisfaction *or adjudicated in a court of competent jurisdiction.* Claims proved to the satisfaction of the comptroller are to be included in the list, and he is also to include in the list all claims adjudicated in a court of competent jurisdiction, which shows conclusively that claims disallowed by the comptroller may be prosecuted in a court having jurisdiction in such cases.* Where the whole assets are not collected and distributed in the first dividend, further dividends on claims proved and adjudicated may be made as the proceeds of the assets are collected and paid to the treasurer, and the remainder, if any, shall be paid to the shareholders.

None of these proceedings, however, support the theory that the association ceased to exist when the receiver was appointed, nor at any time before the assets of the association are fully administered and the balance, if any, is paid to the owners of the stock or their legal representatives.

Delinquent associations whose notes have been protested, and whose officers have been notified by the comptroller that proceedings for liquidation under the act have been instituted, cannot lawfully pay out any of their notes, or discount any notes or bills, or otherwise prosecute the business of banking, except to receive and safely keep money belonging to the association, and to deliver special deposits, which of itself refutes the theory that the association at that stage of the proceedings has ceased to exist. Evidence to refute that theory is also found in the proviso to the fiftieth section of the act, which empowers the association, if they deny having failed to redeem their circulating notes, to apply, within ten days after being so notified by the comp-

---

* Kennedy *v.* Gibson, 8 Wallace, 506.

troller that such proceedings have been commenced, to the nearest circuit, or district, or territorial court of the United States to enjoin further proceedings in the premises, and those courts are invested with full jurisdiction to hear and determine the matters put in issue by such an application.

Such associations are authorized to elect or appoint directors, and the directors are empowered to exercise all such incidental powers as shall be necessary to carry on the business of banking. They may make by-laws, discount and negotiate promissory notes, drafts, bills of exchange, or other evidences of debt; receive deposits, buy and sell exchange, coin, and bullion; loan money on personal security and obtain, issue, and circulate notes, according to the provisions of the act to provide a National currency. Throughout they are enjoined to conform to the regulations of that act, and the provision is that if they knowingly violate any of its provisions or knowingly permit them to be violated, all the rights, privileges, and franchises of the association derived from the act shall be thereby forfeited; but the further provision is that such violation, before the association shall be declared dissolved, shall be determined and adjudged by a proper circuit, district, or territorial court of the United States, which shows conclusively that the act of the comptroller in appointing a receiver does not work a complete dissolution of the association, as is supposed by the defendants.*

III. Express power to sue and be sued, complain and defend, in any court of law and equity, is conferred on such associations by the eighth section of the act providing for their organization, and it seems quite clear that the association is a proper party to be sued in all matters in which the corporation is interested, unless the association is disqualified for that purpose by virtue of the appointment of a receiver or by his subsequent action as such under his appointment. Neither power to sue nor to be sued in such cases is

---

* Frost *v.* Coal Company, 24 Howard, 283; Angel & Ames on Corporations, 9th ed. 777; Abbott's Digest, title " Corporation," 338; Grant on Corporations, 295.

anywhere in terms conferred upon the receiver, nor upon the Comptroller of the Currency in any case except when he institutes a suit to forfeit the rights, privileges, and franchises of the association, and in that case the provision is express that the suit shall be in his own name.* Beyond doubt the appointment of a receiver supersedes the power of the directors to exercise the incidental powers necessary to carry on the business of banking, as the receiver is required to take possession of the books, records, and assets of every description of the association, and from that moment the association is forbidden to pay out any of its notes, discount any notes or bills, or otherwise prosecute the business of banking, but the corporate franchise of the association is not dissolved, and the association, as a legal entity, continues to exist, as is shown to a demonstration by the fact that it is required safely to keep the money on hand belonging to it, and may deliver special deposits in its keeping to the rightful owners.

Much aid cannot be derived from authorities in the examination of this proposition, as the question turns chiefly if not entirely upon the construction of the act of Congress, and suffice it to say that we are all of the opinion that the act contains nothing in its subsequent provisions inconsistent with the theory of the plaintiffs, that the association may sue and be sued, complain and defend, in all cases where it may be necessary that the corporate name of the association shall be used for that purpose in closing its business and winding up its affairs under the provisions of the act which authorized its formation.

Suits and proceedings under the act, in which the United States or their officers or agents are parties, whether commenced before or after the appointment of a receiver, are to be conducted by the district attorney under the direction of the solicitor of the treasury, and no doubt is entertained that the directors, from the time a receiver is appointed, cease to have any power in respect to such matters, and that

---

* Case *v.* Terrell, 11 Wallace. 201.

the control and supervision of the same are vested in the proper officers of the United States. Claims presented by creditors may be proved before the comptroller or may be established by a suit against the association in any court of competent jurisdiction.* Creditors, say the court in that case, must seek their remedy through the comptroller, in the mode prescribed in the act of Congress, and cannot proceed directly in their own names against the stockholders or debtors of the corporation. Suits may be brought by the receiver, both at law or in equity, and the express decision there is that he may sue in his own name, or in the name of the association *for his use,* and no reason is perceived to doubt the correctness of the rule adopted in that case, though the act of Congress does not in terms give him authority to sue in his own name.†

IV. Enough has already been remarked to show that the fourth proposition of the defendants cannot be sustained, as the act of Congress provides that the receiver, in making the basis for a dividend, shall include in the list not only claims proved before him to his satisfaction, but claims also adjudicated in a court of competent jurisdiction.

Attempt is made to show that the adjudicated claims there referred to are only such as had been adjudicated before the receiver was appointed, but the court is of the opinion that such a construction is not warranted either by the language employed, or the subject-matter to which it relates, or the purpose to be accomplished, or by the analogies of the law or the usual rules of interpretation which courts apply in ascertaining the meaning of a legislative provision of a remedial character. Tested by any one or all of these criterions the court is of the opinion that the construction assumed by the defendants is quite too narrow to carry into effect the intention which the framers of the provision had in view at the time it was adopted. Claims presented by creditors may be proved before the receiver, or they may be put in suit in any court of competent jurisdiction, as a means of

---

* Kennedy *v.* Wilson, 8 Wallace, 506.

† Booth *v.* Clark, 17 Howard, 322.

establishing their validity and to determine the amount owed by the association, but the judgment when recovered will not give the creditor any lien on the property of the delinquent association, nor secure to the judgment creditor any preference over other creditors whose claims are proven before the receiver. All alike must await the action of the Comptroller of the Currency, and be content with a just and legal distribution of the proceeds of the assets collected by the receiver and liquidated by the comptroller according to the act of Congress in such case made and provided.

Nothing further need be remarked in respect to the other errors assigned, as it is clear that the conclusions announced dispose of all the questions in the case which are examinable under a writ of error to a State court.

JUDGMENT AFFIRMED.