DENTON v. BAKER.

(Circuit Court of Appeals, Ninth Circuit. February 8, 1897.)

No. 316.

1. INSOLVENT NATIONAL BANKS—JUDGMENTS—RECEIVERS.
    While the receiver of an insolvent national bank may interpose and become a party to a suit to enforce a claim against the bank, he is not a necessary party to such a suit, and a judgment rendered against the bank by a court of competent jurisdiction, in a suit to which he is not a party, is binding upon the receiver, in the absence of fraud or collusion.

2. SAME—EQUITY JURISDICTION—REMEDY AT LAW.
    The holder of a judgment against an insolvent national bank, recovered upon a claim rejected by its receiver, has an adequate remedy by an action at law against the receiver, by the judgment in which the latter may be directed to recognize the claim, and he cannot resort to equity to compel the allowance of the claim by the receiver, or enjoin its rejection.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

Frederick Bausman, for appellant.

L. C. Gilman, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This was a suit in equity, to the bill of complaint in which the court below sustained a demurrer, interposed by the defendant, and, the complainant declining to amend, the court dismissed the bill. The appeal brings up the question of the sufficiency of the bill. The court below held that it did "not state facts sufficient to entitle complainant to relief in equity, and that complainant had an adequate remedy, if any at all, at law." Passing the allegations of the bill in respect to the citizenship of the respective parties, and in respect to the insolvency of the Merchants' National Bank of Seattle, and the appointment and qualification of the defendant, Baker, as receiver of that bank, it alleges that in the month of July, 1893, the bank was pressed for money with which to meet the demands of its creditors, and found itself under the necessity of ob-

taining a loan from the National Park Bank of New York; that, in order to get the collateral for such a loan, it borrowed from one Angus Mackintosh certain bonds and coupons, and in consideration thereof did, in writing, under date of July 26, 1893, acknowledge itself indebted to Mackintosh in the sum of $25,000, which sum it agreed and bound itself to pay Mackintosh with 8 per cent. interest thereon from July 1, 1893, in the event that it should not return the bonds and coupons to him on or before January 1, 1894, which agreement was, by a resolution of the board of trustees of the bank, duly authorized; that on the faith of that agreement the bank obtained the bonds and coupons from Mackintosh, and used them as collateral security from which to borrow money from the National Park Bank of New York, but has ever since failed, neglected, and refused to return the bonds and coupons to Mackintosh, or to pay him the consideration upon which they were obtained, and that neither the bonds nor coupons have ever been offered or tendered or restored by the receiver of the Merchants' National Bank of Seattle to Mackintosh or to the complainant; that about two years after the agreement between Mackintosh and the Merchants' National Bank of Seattle,— that is to say, on or about May 26, 1895,—the Merchants' National Bank became insolvent, and, the comptroller of the United States having appointed the defendant, Baker, receiver of its assets, the comptroller, on June 19, 1895, caused notice to the creditors of the bank to be published, requiring all persons having claims against the bank to present the same to the receiver, with the legal proof thereof, within three months from that date, and instructed the receiver to pass upon the claims presented to him, and to report to him (the comptroller) such claims as he might allow, which instructions were followed; that on August 15, 1895, Mackintosh filed his claim in the sum of $29,250 upon forms of proof furnished by the receiver, and in the manner prescribed by his office, annexed to which was a copy of the written agreement between Mackintosh and the bank, and a copy of the resolution of the board of trustees of the bank authorizing the same, which claim the receiver thereupon rejected; that Mackintosh thereafter, in writing, and for and in consideration of the sum of $16,000, assigned, transferred, and set over to the complainant the whole of his interest in the claim; that thereafter, and within the time prescribed by the comptroller, the complainant, upon forms supplied by the receiver, and in accordance with the manner prescribed by his office, presented to the receiver a verified claim in the sum of $29,450, with proofs of the assignment of the claim from Mackintosh to himself, which claim of the complainant the receiver, on September 27, 1895, rejected, stating that the claim was the same already presented by Mackintosh; that thereafter, and on the 7th day of November, 1895, the complainant, as assignee of Mackintosh, did, in the superior court of King county, state of Washington, a court of competent jurisdiction, bring suit against the Merchants' National Bank of Seattle, and did cause the bank to be personally served in the county of King, in which it is located and did business; that on the 30th day of November, 1895, judgment was rendered and entered in the complainant's favor by that court in the sum of $29,716; that

thereafter, and on January 15, 1896, on forms supplied from the receiver's office, and in the prescribed manner, the complainant presented his claim for the amount so adjudged to be due him from the bank, annexed to which was a duly-certified copy of the judgment, which claim the receiver rejected in these words: "I am in receipt of your favor of the 13th instant, inclosing the claim of D. B. Denton against this trust for $29,716. That claim I have to-day rejected." The bill further alleged that the receiver never at any time assigned any reason for rejecting the claim; that from August 15, 1895, to the time of the bringing of this suit the receiver had actual knowledge of the written agreement of the bank with Mackintosh, and that from some time in September, 1895, he had actual knowledge of its being assigned to the complainant, and that the judgment has been of public record since November 30, 1895, and that the receiver has had actual knowledge of it since January 15, 1896; that at no time has either the comptroller or the receiver brought against Mackintosh or the complainant any action on behalf of the bank or its creditors, or at all sought to set aside, cancel, annul, or in any wise rescind the agreement between the bank and Mackintosh, or to effect its assignment to the complainant, or to impeach, attack, vacate, modify, or in any wise alter the complainant's judgment against the bank, which still stands wholly unpaid, unreversed, unmodified, and not appealed from. The bill further alleged that the comptroller is preparing to levy assessments on the capital stock of the insolvent bank to create funds for the payment of its liabilities; that in such levy he is taking no account of the judgment recovered by the complainant against the bank, and that unless defendant, Baker, be restrained from rejecting the complainant's claim, the whole of it will be disregarded by the comptroller, and the latter will not have evidence before him on which to include this claim, and on which to make a levy sufficient to pay it; that the complainant at all the times mentioned in the bill was, and still is, one of the stockholders of the insolvent bank to the extent of 4 shares, and that his assignor, Mackintosh, was at all those times, and still is, one of its stockholders to the extent of 600 shares, and that each of them will be included in such assessment, and be called upon to pay a proportion of the indebtedness of the bank, and that it is equitable that the assessment include the claim of the complainant, to the end that the other shareholders may be assessed their due proportion of it, and that Mackintosh be compelled, as a shareholder, with the others, to be assessed his proportion also; and that, if the claim of the complainant continue to be rejected by the receiver, irreparable damage and injury will be done the complainant, for which he has no plain, speedy, and adequate remedy at law. The prayer was that the defendant receiver be restrained from any further rejection of the complainant's claim, and that he be compelled to file and allow the same, with interest up to the date at which the Merchants' National Bank of Seattle became insolvent, and that he be compelled, as such receiver, to approve and forward to the comptroller of the currency of the United States the claim of the complainant; and for such other and further relief as the equity of the case may require.

In the case of Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 397, the supreme court said:

"Whenever a receiver [of a national bank] is appointed, the comptroller is required to give notice of the fact, requesting all persons having claims against the association to present the same, and to make legal proof thereof. Provision is first to be made by the comptroller for refunding to the United States any such deficiency in redeeming the notes of the association as is mentioned in the act, and, having refunded that amount, the comptroller is required, in the next place, to make a ratable dividend of 'the money paid over to him by the receiver on all such claims as may have been proved to his satisfaction, or adjudicated in a court of competent jurisdiction. Claims proved to the satisfaction of the comptroller are to be included in the list, and he is also to include in the list all claims adjudicated in a court of competent jurisdiction, which shows conclusively that 'claims disallowed by the comptroller may be prosecuted in a court having jurisdiction in such cases."

In that case the supreme court also held that, notwithstanding the insolvency of a national bank, and the appointment by the comptroller of a receiver of its assets, the corporate franchise of the association continues, and the association, as a legal entity, continues to exist, and is capable of suing and liable to be sued in all matters in which the corporation is interested. It is not denied that the state court of King county, Wash., where the corporation was located, and where the contract relied on by the complainant was made, was a court of competent jurisdiction for the adjudication of the rights of the parties to the contract which forms the basis of the complainant's suit, had there been no insolvency proceedings. It follows that it was a court of competent jurisdiction for the adjudication of the complainant's claim, the bank having become insolvent, and the receiver of its assets having rejected the claim. Undoubtedly, the receiver would have been entitled to have defended that suit in the name of the bank or in his own, and would have been permitted by the court, upon a seasonable application, to have contested the validity of that judgment.

In Bank v. Colby, 21 Wall. 609, one of the questions was whether the property of a national bank organized under the act of congress of June 3, 1864, attached at the suit of an individual creditor, after the bank has become insolvent, can be subjected to sale for the payment of his demand against the claim for the property by a receiver of the bank subsequently appointed; and the court said, among other things:

"It is too late for counsel to question in this court the right of the receiver to appear in the state court, and move the discharge of the attachment and the abatement of the suit, or to contest the case at the trial. Whatever informality may have existed in the proceeding, it was waived by the silence of the parties. Objections in matters of form to modes of procedure in the court below cannot be urged here for the first time. But, independently of this consideration, we are of opinion that it was a proper proceeding on the part of the receiver to apply to the court below to discharge the attachment on proof of the facts presented by him, and the production of his appointment, and the decree dissolving the association. Invested with the rights of the bank to the possession of the property by his appointment, it was his duty to take the necessary steps to remove the levy."

In Bank v. Kennedy, 17 Wall. 19, it was held that the receiver may sue in his own name or in that of the bank; and, if he may so sue,

he may so defend. In the Bank of Bethel Case, above cited, while the receiver was not a party to the suit, and does not appear to have taken any part in it in the supreme court, it appears from the report of the case in the supreme court of Connecticut, from which court the case was taken to the supreme court of the United States, that the suit was there defended by the receiver, by direction of the comptroller of the currency, in the name of the defendant to the suit, for the benefit of the stockholders and creditors of the bank. National Bank of Pahquioque v. Bank of Bethel, 36 Conn. 325. But, while the receiver of an insolvent national bank may, in the interest of its creditors and stockholders, and for the protection of its assets, interpose, and become a party to a suit to enforce a claim against the bank, it does not follow that he is a necessary party to such a suit. The statute creating such banking institutions, and providing for their conduct, and for their management, and for winding them up in the event of insolvency, does not require that the suit to establish a claim before a court of competent jurisdiction shall be brought against the receiver. The provision of the statute is that:

"From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction." Rev. St. § 5236.

Under this language the supreme court, in the case of National Bank of Pahquioque v. Bank of Bethel, supra, sustained a suit against the insolvent bank, to which the receiver did not appear as a party; and in National Bank of the Commonwealth v. Mechanics' National Bank, 94 U. S. 437, 440, it was expressly held that claims against an insolvent bank, whose validity is established by a judgment in a court of competent jurisdiction, and claims that are proved to the satisfaction of the comptroller, stand upon the same footing. In that case a suit against the insolvent bank for interest accruing after the allowance of the principal sum by the receiver was sustained, although the receiver was not a party thereto. In the cases of Turner v. Bank, 26 Iowa, 562, and Green v. Bank, 7 Hun, 63, cited and relied on by the appellee, it was held that the receiver was a proper party to a suit brought in a court of competent jurisdiction to establish a claim against the insolvent bank; but in neither of those cases was it held that he is a necessary party to such a suit. Case v. Bank, 100 U. S. 446, was an action by the Citizens' Bank of Louisiana against the receiver of the Crescent City National Bank to recover damages for a refusal on the part of the latter bank, prior to its insolvency, to permit a transfer of certain shares of its capital stock. The proof showing, and the jury having found, that the Citizens' Bank was damaged by that refusal on the part of the insolvent bank in a certain sum of money, the supreme court sustained the action against the receiver of the insolvent bank, and affirmed the judgment of the lower court, directing the receiver to recognize the Citizens' Bank as a creditor for the amount in which it had been damaged, and requiring him to provide for its payment along with the other creditors of the insolvent bank.

79 F.—13

It results, we think, from the decisions of the supreme court to which we have referred, that an action to establish the validity of a claim against an insolvent bank may be brought in a court of competent jurisdiction against both the insolvent bank and the receiver, or against the insolvent bank or the receiver; and if against the receiver either jointly with the insolvent bank or against him only, he may be directed by the judgment in the action to recognize the claim, and to provide for its payment along with the other claims against the bank; and if against the insolvent bank only, it is binding upon the receiver, unless void by reason of fraud or collusion.   The case is analogous to that of a suit brought against a debtor for the recovery of a debt, after a general assignment of his property made to a trustee for the benefit of creditors.   The contract between the debtor and creditor would still subsist, and could be enforced by suit against the debtor, and a judgment between the original parties on the contract would necessarily establish the existence and extent of the obligation between them, as well as against a trustee of his estate for the benefit of creditors.   Pringle v. Woolworth, 90 N. Y. 502, 511. That was evidently the view taken by the supreme court of the national banking act in the case of Bank of Bethel v. Pahquioque Bank, supra, where it said: "Claims presented by creditors may be proved before the receiver, or they may be put in suit in any court of competent jurisdiction as a means of establishing their validity."   14 Wall. 401.

The validity of the complainant's claim being thus established against the bank, and the receiver continuing to reject it, the claimant is clearly entitled to some remedy to enforce his right.   That he cannot resort to mandamus is conceded by the appellee.   The United States courts have no jurisdiction in mandamus except where the right sought is ancillary to their other powers, or to enforce their own judgments.   McIntire v. Wood, 7 Cranch, 504; Bath Co. v. Amy, 13 Wall. 244; Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633; Gares v. Association, 55 Fed. 209.   But there is no difficulty in the way of the complainant maintaining an action at law against the receiver upon the judgment recovered by him in the state court. Hickman v. Macon Co., 42 Fed. 759; Freem. Judgm. § 432; 2 Black, Judgm. § 958, and cases there cited.   The judgment in such action at law may direct the receiver to recognize the claim of the complainant, and to provide for its payment along with all other claims against the insolvent bank.   Case v. Bank, 100 U. S. supra.   This affords complainant a plain, speedy, and adequate remedy, and therefore he cannot resort to equity.   The judgment is affirmed.