**ALLEN, Bank Commissioner, et al. v. UNITED STATES.**

(Circuit Court of Appeals, First Circuit. January 16, 1923.)

No. 1549.

1. **Banks and banking** ⬅➡80(7)—**Unauthorized deposit of public money held trust fund.**

Where the superintendent of a postal station deposited funds of his office in a bank which was not an authorized depositary in violation of law, which prohibits such deposits and makes it a criminal offense for bank officers to knowingly receive them, and the bank, at all times between the time of such deposits and the time it was closed as insolvent, had cash on hand in excess of the amount of the deposits, such cash held to have passed into the hands of the state bank commissioner impressed with a trust in favor of the United States for the amount of the deposits.

2. **Courts** ⬅➡303(2)—**As affecting jurisdiction of federal District Court, suit against state bank commissioner not one against state.**

A suit against a state bank commissioner to establish a claim against assets of an insolvent bank, of which he has taken charge, held not one against the state, which has no interest in the fund, but in effect one against the bank, which the commissioner was authorized by law to defend.

3. **Courts** ⬅➡500—**Possession of property by state bank commissioner held not to exclude jurisdiction of federal court.**

Under the law of Massachusetts, the state bank commissioner, in taking charge of the property of an insolvent bank, does not act in the capacity of a receiver, and his possession is not the possession of a state court, which excludes jurisdiction of a federal court to entertain a suit to establish rights in the property, where it otherwise has jurisdiction.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the United States against Joseph C. Allen, as Bank Commissioner, and others. Decree for complainant, and defendants appeal. Modified.

John E. Hannigan, of Boston, Mass., for appellants.

Frederic S. Harvey, Asst. U. S. Atty., of Lowell, Mass. (Robert O. Harris, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM and JOHNSON, Circuit Judges, and MORTON, District Judge.

JOHNSON, Circuit Judge. J. Thomas Ward, as superintendent of the Essex station of the Boston postal district, deposited with the Prudential Trust Company, a banking corporation duly authorized under the laws of the commonwealth of Massachusetts, having a place of business in Boston, in said commonwealth, money received by him in his said capacity to the amount of $8,928.66, which was entered in an account to the credit of J. Thomas Ward, Superintendent, Essex Street Post Office. He also deposited to the account of J. Thomas Ward, Superintendent, Essex Street Post Office, M. O. (the letters M. O. meaning money orders), the following sums received from the sale of money orders: $600 on September 8, 1920; $1,292.13 on September 9, 1920; and $1,700 on September 9, 1920—making the amount of both accounts $12,520.79.

On or about September 10, 1920, said defendant, Joseph C. Allen, as commissioner of banks, took possession of the property and business of the Prudential Trust Company by virtue of chapter 167 of the General Laws of Massachusetts, and is proceeding to liquidate and distribute the assets of said company as provided by said chapter.

On or about October 18, 1920, he appointed the defendant John E. Hannigan as his agent to assist him in the performance of this duty.

From the agreed statement in the record it appears that the assets of the Prudential Trust Company were insufficient to pay its liabilities when possession of its property and business was taken by the commissioner; that the Prudential Trust Company had full knowledge that the said J. Thomas Ward was the superintendent of the Essex Street station of the Boston postal district; that the funds deposited by him had been received by him in his official capacity as such superintendent from the sale of postal supplies and money orders; that the specific money constituting both accounts cannot be traced or identified as such, but that the Prudential Trust Company has had on hand at all times, since said money was deposited, funds in its commercial department exceeding the amount of said accounts; that the said Prudential Trust Company was not, when said deposits were made, an authorized depositary of postal funds or money order funds, and that said Ward had no authority from the postmaster at Boston to deposit said funds with the Prudential Trust Company.

It also appears that immediately upon depositing $600 on September 8, 1920, $1,292.13 on September 9, 1920, and $1,700 on the last-named date, to the credit of J. Thomas Ward, Superintendent Essex

Street Post Office, M. O., the said Ward drew checks for each of said amounts payable to Roland M. Baker, postmaster, which checks were certified by the Prudential Trust Company, but that on the next day, before said checks were presented for payment, the defendant Joseph C. Allen, as bank commissioner, had taken possession of the effects of the Prudential Trust Company, and said checks were not paid when presented.

The District Court has found that the United States is entitled to priority of payment under R. S. § 3466 (Comp. Stat. § 6372). The view which we have taken of the case, however, renders it unnecessary to consider this ruling.

[1] The bill alleges, and it is admitted in the agreed statement, that the said J. Thomas Ward had no authority to deposit funds of the United States with the Prudential Trust Company and that the Prudential Trust Company had no authority to receive funds of the United States for deposit. The answer also admits that there was in Boston at the time the above deposits were made an Assistant Treasurer of the United States or a designated depositary there of the funds of the United States.

By section 3846 of the Revised Statutes of the United States (section 7208, Comp. Stat.), postmasters are forbidden to deposit public money collected by them in an unauthorized bank.

Section 3847, R. S. (section 7209, Comp. Stat.), authorizes a postmaster at an office within a city or town where there is no Treasurer or Assistant Treasurer of the United States, or designated depositary, to deposit public money temporarily, at his own risk and in his official capacity, in any national or state bank of the state in which the said postmaster resides, or in which his office is located. This section has no application to the facts in this case as there was an Assistant Treasurer of the United States and an authorized depositary of public funds in Boston.

Section 364 of the Regulations of the Post Office Department provides that, when a deposit is made by a postmaster in accordance with this statute, it shall only be for safe-keeping, and that the funds or other property deposited shall be kept in a receptacle under the postmaster's exclusive control, and that under no circumstances are such funds or property to be used by the bank, or become a part of its assets, or be mingled with its regular deposits.

Section 5490, R. S. (Comp. Stat. § 10257), makes every officer or other person charged by any act of Congress with the safe-keeping of public moneys guilty of embezzlement if he has deposited such moneys in any bank unless specially allowed by law to do so.

Section 5497, R. S. (Comp. Stat. § 10264), makes every officer of a bank which is not an authorized depositary of public moneys guilty of embezzlement, if he shall have knowingly received such money for deposit from any agent of the United States.

The Prudential Trust Company not being an authorized depositary of public funds, the superintendent of the Essex Street station not only had no authority, but was positively forbidden, to deposit

with it money of the United States received by him in his capacity, and its officers were guilty of embezzlement in knowingly, receiving it.

In view of these positive declarations of the statute, the fact that the superintendent of the Essex Street station had for several years, with the knowledge and consent of the postmaster at Boston, made deposits in the Prudential Trust Company, an unauthorized depositary, could not render such deposits legally made.

As the deposits were not only unauthorized, but prohibited by law, the Trust Company never had title to the money covered by them, but held it as a trustee ex maleficio, and if it can be traced into the possession of the commissioner it is charged with the same trust. The United States has not elected to become a party to the liquidation proceedings by asserting a claim as a debtor or depositor, nor are its rights affected by the unauthorized act of J. Thomas Ward in filing a proof of claim with the commissioner.

As to the deposits which were made upon September 8th and 9th, amounting in all to $3,592.13, for which checks were at once drawn and certified by the Prudential Trust Company, there does not seem to be any doubt that the amount of these deposits was among the cash assets of the bank when possession of them was taken by the commissioner.

As to the other deposits, amounting to $8,928.66, it is agreed that the trust company had on hand at all times after said money was deposited, and when possession was taken by the commissioner, cash assets in its commercial department exceeding the amount of both said accounts. Under these admitted facts it is a presumption of law that the trust fund is included in the cash assets in its commercial department and has never been wrongfully appropriated.

While the burden is upon the beneficiary to trace the trust fund, we think, under the circumstances of this case, this has been done and that the cash effects in the commercial department of the trust company which have come into the possession of the commissioner are impressed with a trust in favor of the United States for the full amount of $12,520.79. The conclusion which we have reached is supported by the following authorities: Frelinghuysen v. Nugent et al. (C. C.) 36 Fed. 229; Central Nat. Bank v. Conn. Mutual Life Ins. Co., 104 U. S. 54, 68, 26 L. Ed. 693; Peters v. Bain, 133 U. S. 670, 10 Sup. Ct. 354, 33 L. Ed. 696; Standard Oil Co. of Ky. v. Hawkins, 74 Fed. 395, 20 C. C. A. 468, 33 L. R. A. 739; Spokane County v. First Nat. Bank of Spokane et al., 68 Fed. 979, 982, 16 C. C. A. 81; Merchants' Nat. Bank v. School District No. 8, 94 Fed. 705, 36 C. C. A. 432; Board of Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100; Brennan v. Tillinghast, 201 Fed. 609, 120 C. C. A. 37; In re Brown, 193 Fed. 24, 113 C. C. A. 348; In re See, 209 Fed. 172, 126 C. C. A. 120; Titlow v. McCormick, 236 Fed. 209, 149 C. C. A. 399; United States Nat. Bank v. City of Centralia, 240 Fed. 93, 15 C. C. A. 129; Phillips v. Yates Center Nat. Bank, 98 Kan. 383, 158 Pac. 23, L. R. A. 1917A, 680, note, at page 683; Schuyler v. Littlefield, 232 U. S. 707, 710, 34 Sup. Ct. 466, 58 L. Ed. 806; 18 Corpus Juris, p. 580, § 45; 22 R. C. L. p. 230.

[2] The contention that the District Court was without jurisdiction because this is a suit against the state of Massachusetts is clearly untenable. The state claims no title to any of the property of the trust company held by the commissioner and can be in no way affected by any decree that may be entered. The real defendant in this case is the trust company, and if that had been made the defendant, the commissioner could have intervened. By section 25 of chapter 167 of the General Laws of Massachusetts he is authorized in the name of the trust company to prosecute and defend all suits.

A suit may be brought in a state court against a national bank or its receiver, although in process of liquidation, under the laws of the United States. First National Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 402, 20 L. Ed. 840; Continental Securities Co. v. Interborough Rapid Transit Co. (C. C.) 165 Fed. 945, 965; Anglo-American Land M. & A. Co. v. Cheshire Providence Inst. (C. C.) 124 Fed. 464, 466; Speckert v. German Nat. Bank, 98 Fed. 151, 153, 38 C. C. A. 682; Denton v. Baker, 79 Fed. 189, 24 C. C. A. 476.

In Denton v. Baker, supra, the court said:

"It results, we think, from the decisions of the Supreme Court to which we have referred, that an action to establish the validity of a claim against an insolvent bank may be brought in a court of competent jurisdiction against both the insolvent bank and the receiver or against the insolvent bank or the receiver; and if against the receiver either jointly with the insolvent bank or against him only, he may be directed by the judgment in the action to recognize the claim, and to provide for its payment along with the other claims against the bank. * * * The case is analogous to that of a suit brought against a debtor for the recovery of a debt, after a general assignment of his property made to a trustee for the benefit of creditors. The contract between the debtor and creditor would still subsist, and could be enforced by suit against the debtor, and a judgment between the original parties on the contract would necessarily establish the existence and extent of the obligation between them, as well as against a trustee of his estate for the benefit of creditors. Pringle v. Woolworth, 90 N. Y. 502, 511. That was evidently the view taken by the Supreme Court of the National Banking Act in the case of Bank of Bethel v. Pahquioque Bank, supra (36 Conn. 325), where it said: 'Claims presented by creditors may be proved before the receiver, or they may be put in suit in any court of competent jurisdiction as a means of establishing their validity.' 14 Wall. 401."

See, also, Earle v. Pennsylvania, 178 U. S. 449, 20 Sup. Ct. 915, 44 L. Ed. 1146, and Lyon v. McKeefrey, 171 Fed. 384, 96 C. C. A. 340.

This case is easily distinguishable from Lankford v. Platte Iron Works, 235 U. S. 461, 35 Sup. Ct. 173, 59 L. Ed. 316, in which it was held by a bare majority of the court that—

"A suit by a depositor in a bank in Oklahoma against members of the state banking board and the bank commissioner of Oklahoma to compel payments from, distribution of, and assessments for, the depositors' guaranty fund, is a suit against the state, and, under the Eleventh Amendment, cannot be maintained in the federal court."

There it appeared that the title to the depositors' guaranty fund was by a decision of the state court of Oklahoma held to be in the state and the Supreme Court said:

"From this decision it appears that the law intended to give to the state as definite a title to the depositors' guaranty fund as to the common school fund."

[3] Here neither the state of Massachusetts nor the bank commissioner are asserting any title to the assets of the trust company. It is also contended that, because the bank commissioner had taken possession of the property of the trust company, including the property of the United States under authority of the state of Massachusetts, the District Court was without jurisdiction to enter any decree; that the possession of the commissioner was equivalent to or analogous to that of a receiver appointed by the Supreme Judicial Court of Massachusetts, to which, under the statute appointing him, he must make his report.

The character of the commissioner has recently received consideration by the Supreme Judicial Court of Massachusetts in Commonwealth v. Allen, 133 N. E. 625, in which the court, by Rugg, C. J., said:

"The commissioner is an executive or administrative officer. He exercises visitorial powers, is charged with duties of rigid inspection, and, when circumstances exist enumerated in St. 1910, c. 399, § 2 (G. L. c. 167, § 22), may take and retain possession of the property and business of the bank for tne purpose of liquidation of its affairs in accordance with the statute. He acts in all these particulars as a public officer, and not as a receiver appointed by the court. While he possesses some powers commonly conferred upon a receiver, and in many respects is subject to the direction of the court, he nevertheless carries out directly and in his own official capacity a legislative policy. His chart is the legislative mandate as declared in the statute."

A citizen of a state other than that in which an estate is being administered may in a federal court establish his right to a share in the estate and enforce such adjudication against the administrator personally or his sureties. Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260; Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536; Hess v. Reynolds, 113 U. S. 73, 5 Sup. Ct. 377, 28 L. Ed. 927; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 30 Sup. Ct. 10, 54 L. Ed. 80; McClellan v. Carland, 187 Fed. 915, 918, 110 C. C. A. 49.

In Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. at page 45, 30 Sup. Ct. at page 13 (54 L. Ed. 80), Mr. Justice Day, delivering the opinion of the court, said:

"The complainant, a citizen of a different state, brings her bill against the executor and certain legatees named, who are likewise citizens of anotner state, and are all citizens of Louisiana, where the bill was filed, except one, who was beyond the jurisdiction of the court, and for the reasons stated in her bill she asks to have her interest in the legacy alleged to be lapsed and the residuary portion of the estate established. * * *

"The United States Circuit Court, by granting this relief, need not interfere with the ordinary settlement of the estate, the payment of the debts and special legacies, and the determination of the accounts of funds in the hands of the executor; but it may, and we think has the right to determine as between the parties before the court the interest of the complainant in the alleged lapsed legacy and residuary estate, because of the facts presented in the bill. The decree to be granted cannot interfere with the possession of the estate in the hands of the executor, while being administered in the probate court, but it will be binding upon the executor, and may be enforced against it personally. If the federal court finds that the complainant is entitled to the alleged lapsed legacy and the residue of the estate, while it cannot interfere with the probate court in determining the amount of the residue arising from the settlement of the estate in the court of probate, the decree can find

the amount of the residue, as determined by the administration in the probate court in the hands of the executor, to belong to the complainant, and to be held in trust for her, thus binding the executor personally, as was the case in Payne v. Hook, 7 Wall. 425, supra, and Ingersoll v. Coram, 211 U. S. 335, supra.

"It is to be presumed that the probate court will respect any adjudication which might be made in settling the rights of parties in this suit in the federal court. It has been frequently held in this court that a judgment of a federal court awarding property or rights, when set up in a state court, if its effect is denied, presents a claim of federal right which may be protected in this court."

If a federal court may determine the share of an heir, legatee, or creditor in an estate under administration in a state court, it clearly has jurisdiction to determine, under the allegations in the bill and the admitted facts in this case, whether or not the cash effects in the commercial department of the trust company in the possession of the commissioner of banks is impressed with a trust in favor of the United States and the extent and character of the trust.

It does not appear from the record that there are not parties other than the United States for whom funds were held in trust by the trust company, which may be included in the cash effects of its commercial department now in the possession of the commissioner.

As there may be others and the cash effects may be insufficient to pay the interests of all in full, no decree can be entered that the United States should be paid the full amount of the deposits of its money which were wrongfully made in the trust company.

We go no further than to determine that these deposits were wrongfully made and unlawfully received and that the total amount of money covered by them was held in trust by the trust company for the United States and came into the possession of the commissioner of banks impressed with this trust, and that, with the claims presented by him to the court of the state of Massachusetts which have been proved, and allowed by him, he should include as an adjudicated claim that of the United States as herein determined.

The decree of the District Court is vacated, and it is hereby ordered, adjudged, and decreed that money of the property of the United States in the sum of $12,520.79 was unlawfully deposited in and unlawfully received by the Prudential Trust Company; that this sum was held by the trust company in its cash effects in its commercial department in trust for the United States, and came into the possession of the commissioner of banks impressed with his trust; that no costs be awarded either party in this court; that the commissioner present a duly certified copy of this decree to the court to which he is required by law to report the claims against the Prudential Trust Company which have been proved and allowed by him.