ANGLO-AMERICAN LAND MORTGAGE & AGENCY CO., Limited, v. CHESHIRE PROVIDENT INSTITUTION.

(Circuit Court, C. D. New Hampshire. July 27, 1903.)

No. 453.

1. CORPORATIONS—DISSOLUTION—EFFECT OF STATUTORY INSOLVENCY PROCEEDINGS.

Judicial proceedings on petition of the bank commissioners under Pub. St. N. H. 1891, c. 162, for winding up a banking corporation, in which an assignee is appointed in whom the title to all its property vests, do not operate to dissolve the corporation at once, so as to preclude the rendition of a judgment against it by a federal court.

2. FEDERAL COURTS—ACTION AGAINST CORPORATIONS—EFFECT OF STATUTORY INSOLVENCY PROCEEDINGS.

The vesting of the property and assets of a corporation, by virtue of a state statute, in a trustee or assignee appointed by a state court in proceedings for the purpose, does not place such property and assets in custodia legis in such sense as to prevent a federal court from entertaining an action and rendering a judgment against the corporation, whatever may be the proper proceeding for its enforcement.

At Law. Trial to the court by stipulation.

Omar Powell and Sargent & Niles, for plaintiff.
Batchelder & Faulkner and J. M. Mitchell, for defendant.

PUTNAM, Circuit Judge. This case is submitted to be tried before the court without a jury, on a stipulation conforming to the statutes of the United States with reference thereto. The liability of the defendant has been ascertained, and the amount thereof fixed, and the case is ripe for judgment, unless it be for the matters explained in this opinion.

After this suit was commenced, namely, on March 14, 1899, by a decree of the Supreme Judicial Court of the state of New Hampshire on petition of the bank commissioners for that state, under the pro-

¶ 1. See Banks and Banking, vol. 6, Cent. Dig. § 170.

¶ 2. Jurisdiction of federal courts as affected by possession of the subject-matter, see note to Adams v. Mercantile Trust Co., 15 C. C. A. 6.

visions of chapter 162 of the Public Statutes of 1891, Alfred T. Batchelder was duly appointed and qualified assignee of the defendant corporation, and thereupon all its property and assets were transferred to and vested in Mr. Batchelder as such assignee, and still so remain, to be converted into money, and distributed according to the future decrees of the state court in accordance with the statute referred to. Subsequently the Supreme Judicial Court appointed a commissioner in accordance with the statute named to examine and allow the claims against defendant corporation of its depositors and other creditors, and that commissioner is still acting under that appointment. It is claimed that the decree and appointment dissolved the defendant corporation, so that no judgment can be rendered against it; and it is further claimed that the case comes within the ordinary rule by virtue of which adverse proceedings cannot be taken against assets in the hands of receivers appointed by a judicial tribunal, except with the consent of the tribunal making the appointment.

Prior to the commencement of this suit, on applications of the commissioners in accordance with the provisions of the statute of New Hampshire referred to, the Supreme Judicial Court issued its injunction restraining the defendant corporation from receiving and paying out deposits; and again, subsequent to the commencement of this suit, the same court issued a general injunction restraining all creditors from instituting, or further prosecuting, any actions at law against it. These injunctions, however, are not properly pleaded in the case; and, even if they were, the orders of the Supreme Judicial Court so far as they are concerned, were coram non judice with reference to the plaintiff, a nonresident of the state of New Hampshire. Moreover, the injunctions are futile under the well-known rule which prohibits such injunctions against proceedings in the federal courts, and also because they are purely incident to the main questions which we are asked to consider, and stand or fall with it.

Nothing can be found in the statutes of New Hampshire which declares a dissolution of this corporation. On the other hand, the statutes, which have long existed, and which are now found in Pub. St. 1891, c. 148, § 18, like similar statutes in nearly all the states, if not in all of them, continue the corporate existence, for the purpose of prosecuting and defending suits, beyond the forfeiture or termination of the charter for a period not yet expired. Section 19 also contains a provision that the repeal of a charter shall not impair a liability previously incurred; and, although this is ineffectual, either one way or the other, in the federal courts (Curran v. Arkansas, 15 How. 304, 14 L. Ed. 705), yet it illustrates the character of the legislation of New Hampshire in the aspects to which we have referred.

Neither is there anything in the decisions of the Supreme Judicial Court of New Hampshire which supplements the statutes to the effect that this corporation has been dissolved. What the court has constantly said is that it is "practically dissolved," which, of course, is a direct implication that it is not dissolved as a matter of law. The court, however, has made this clear by stating that corporations in the condition of the one at bar still "have legal existence and the usual officers," though "only for the purpose of carrying into effect the ob-

jects of the assignment." So long as it has a legal existence, that, on well-settled rules, is sufficient for the federal courts, whatever qualifications the local courts may attach thereto for the purposes of a peculiar local policy. This corporation is in a condition analogous to that of a national bank which has gone into the hands of a receiver appointed by the Comptroller of the Currency. Chemical Bank v. Hartford Deposit Company, 161 U. S. 1, 16 Sup. Ct. 439, 40 L. Ed. 595. Its condition is expressed by the quaint, but effective, language of Mr. Justice Barrows with reference to a corporation organized under the laws of the state of New York whose assets were in process of distribution under a statutory system like that of New Hampshire, as follows:

"Like the apocalyptic church in Sardis, when its existence was recognized, and it was addressed in the language of reproof by the apostle, though in some sort it may be said to be dead, 'it has a name to live'; and, for the furtherance of justice, it is best to 'strengthen the things that remain that are ready to die.'" Hunt v. Columbian Insurance Company, 55 Me. 290, 296, 92 Am. Dec. 592.

It is clear that the defendant corporation has not been dissolved. There is no obstacle arising out of its statutory condition to prevent judgment being rendered against it.

As to the other proposition of the defendant, the condition is not analogous to the status where claims are sought to be maintained against assets in the hands of a receiver appointed by a chancery court under the general rules of equity procedure. The property of the defendant corporation is not in custodia legis in any such sense. The title is vested in a statutory trustee, and the condition is the same as that relative to the assets of any individual or corporation which have passed to a trustee selected by the Legislature or by the decree of a court, whether he be so named or designated as assignee or receiver. Judgment may be rendered in the federal tribunals as against an administrator or executor of an insolvent estate of a deceased person, notwithstanding provisions of local statutes as to the method of procedure with reference thereto. We are not now required to determine whether or not execution can issue, or whether the judgment, if rendered, can be enforced against the assets of the corporation in any way except by listing it as a debt proved before the commissioner. Probably, in this respect, the case stands as would a suit against an executor or administrator of the estate of a deceased person, or against a national bank after it has passed into the hands of a receiver. Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 402, 20 L. Ed. 840. However, for the present, we are only required to reserve the question of what shall be done with the judgment when entered.

The plaintiff has submitted to us certain propositions with reference to interest. We find no question concerning the same made by the defendant. Therefore the amount of the judgment will be as stated in the stipulation between the parties dated May 28, 1903, and filed at a time not shown by the record before us.

It is ordered that a judgment for plaintiff shall be entered for the amount of principal and interest, as agreed by stipulation dated on May 28, 1903, with costs; that no execution issue therefor until fur-

ther order; and that either party has to and including August 7, 1903, to file a draft bill of exceptions, and to and including August 14, 1903, to file corrections thereof, all the same to be presented to the presiding judge on or before August 17, 1903.