ANGLO–AMERICAN LAND MORTGAGE & AGENCY CO., Limited, v. CHESHIRE PROVIDENT INSTITUTION.

(Circuit Court, D. New Hampshire. December 29, 1904.)

1. JUDGMENT AGAINST BANK—EFFECT OF LIQUIDATION PROCEEDINGS UNDER STATE STATUTE AS TO STAYING EXECUTION.

Where, pending an action in a federal court against a New Hampshire bank, an assignee was appointed by the state court under Pub. St. N. H. 1891, c. 162, in whom the assets of the defendant bank were vested, and thereafter judgment was rendered against it by the federal court, in view of the uncertainty as to the rights of the parties under such statute, and especially of the fact that defendant has a clear remedy at common law against any wrongful enforcement of the judgment, the federal court will not interpose summarily by denying an execution to plaintiff which might be prejudicial to his rights.

On Motion to Revoke Order Staying Execution.

Omar Powell and H. G. Sargent, for plaintiff.
J. M. Mitchell, O. E. Cain, and J. S. H. Frink, for defendant.

PUTNAM, Circuit Judge. This is the sequel of a suit at common law, the more important points of which are stated in the opinion of this court in the same suit of July 27, 1903 (124 Fed. 464),

and in that of the Circuit Court of Appeals passed down on August 11, 1904 (132 Fed. 968), affirming the judgment for the plaintiff rendered in accordance with the opinion first named. The defendant is what is ordinarily known as a savings bank. The plaintiff sued as a creditor, and not as a depositor. The only defense at the trial was that, after this suit was brought, an assignee had been appointed in accordance with section 15, c. 162, Pub. St. N. H. 1891, found at page 461. In connection with section 1, which clearly extends its provisions to savings banks, chapter 162 provides that, whenever the bank commissioners judge it "to be necessary for the public safety," they may apply to the Supreme Court, or a justice thereof, to appoint an assignee of the property and effects of a bank: and thereupon the assignee shall be appointed, and the orders and rules by which he shall be governed shall be prescribed. The statute further provides that the assignee shall take possession of all the estate of the institution, and recover the same wherever found; also that the court may restrain all proceedings at law brought by any creditor against the institution, and may order notice requiring all creditors to prove their claims; and it further provides how the property of the institution shall be distributed—First, to the expenses; second, to payment of bills (that is, circulating bills); third, to payment in equal proportion of all debts; and, fourth, to a division of the balance among the stockholders. Many of these expressions are inapt for savings banks, especially so except as depositors stand qua stockholders, as undoubtedly they do for the purposes of the statute.

Whether the assignee provided for by the statute is an officer of the court, or holds an official position, and whether his possession of the assets is to be regarded as possession by the court, has not been precisely determined, and need not be considered for the present purposes, because, whichever way the questions may be answered, it is certain that no judgment which we might render, and no execution which we might authorize, can be enforced against the assets in the possession of the assignee, at least until either he, or the court or justice appointing him, shall have actually refused to permit a plaintiff who has obtained a judgment from us to share equitably with other creditors, if the plaintiff has no attachment, or to receive the benefit of the lien given him by attachment if he has one, and the same is still in force. In either such contingency the present plaintiff in this court would probably find some remedy within our power to give him, or else by writ of error from the Supreme Court of the United States to the state court or by appeal; but until such a practical condition of affairs arises there is no occasion to consider the precise nature of the assignee's office or of his title or possession.

When we entered judgment for the plaintiff, we expressly reserved all questions as to an execution in the following phraseology:

"It" (meaning this court) "also finds that such proceedings of the Supreme Court are immaterial, unless on the question of the plaintiff's right to an execution, which question is reserved."

The order for judgment also provided "that no execution issue therefor until further order." Thus we held in our own hands, for the time being, the matter of the issue of an execution, expressing no views whatever in reference thereto. Properly speaking, the question now before us arises out of this reservation, although it comes in the shape of a motion by the plaintiff that we shall order judgment in accordance with the mandate of the Circuit Court of Appeals, that the stay of execution, of which we have already spoken, be revoked, and that "plaintiff have execution in accordance with the law and practice." To this motion we have no formal answer, no statement of the precise condition of facts in this particular case, no proofs, and no proposition on either one side or the other except general citations having some bearing with reference to the construction to be given to the very crude and indefinite provisions of Pub. St. 1891, c. 162. It appears by the officer's return on the writ of attachment that certain assets of the defendant corporation were attached, and there is also an indirect suggestion that that attachment was dissolved by a bond given to pay any judgment recovered by the plaintiff. Yet, whether there are assets ·on which the plaintiff now claims a lien by virtue of its attachment; whether, if an execution issue, it should be qualified so as to reach only those assets in accordance with the practice which the federal courts have found themselves capable of, but as to which some of the state courts have not been able to mold their processes as to the federal courts; whether the attachment has been dissolved, and a bond given, so that the plaintiff needs no execution; whether the defendant would be damnified, or even embarrassed, by the issue of an execution—are questions which the record does not assist us in answering. Further, chapter 162 of the Public Statutes makes no express provision avoiding attachment liens, and there are no judicial decisions holding that dissolution of such liens are the inevitable consequence of the scheme provided by statute. Moreover, the proceedings which resulted in the appointment of an assignee contained nothing specifically pointing out their nature and purpose; and, inasmuch as such proceedings may be inaugurated whenever the bank commissioners and the court deem it "necessary for the public safety" that they should be, it is impossible to say whether any question of insolvency exists, or what the governing fact is by which the relations of all concerned should be determined.

We have had no assistance on the solution of any of these particular difficulties. No reported decision cited to us solves any of them; and on all sides we may well say that we encounter grave doubts, in addition to those spoken of by the Circuit Court of Appeals in the opinion to which we have referred. If we merely revoke so much of the proceedings as reserved execution, we leave matters to take their ordinary course. In that event we will have failed to interpose in a summary manner. Inasmuch as the questions involved in this motion necessarily arise after judgment, and are not issuable before it, the parties have ·a clear remedy, if we do not interpose summarily, eith'er by audita querela (Bacon's

Abridgment [Am. Ed. 1868] vol. 1, 510), or by mandamus or by prohibition (McCargo v. Chapman, 20 How. 555, 557, 15 L. Ed. 1021; Barber Co. v. Morris, 132 Fed. 945, 952). If we interpose summarily it is, on the present record, impossible for us to understand the extent of the detriment we might do the plaintiff; and in view of McCargo v. Chapman we cannot even say that it would be entitled to a writ of error. United States v. Abatoir Place, 106 U. S. 160, 162, 1 Sup. Ct. 169, 27 L. Ed. 128; Loeber v. Schroeder, 149 U. S. 580, 585, 13 Sup. Ct. 934, 37 L. Ed. 856. On the whole, if we proceed summarily it is impossible for us to forecast to what extent we will prejudice or damnify the rights of the plaintiff, but if we leave events to the normal course of the common law no serious detriment can arise to either party. Therefore we ought to regard the ordinary rule with reference to discretionary action in a summary way, which has been especially applied to proceedings where parties can obtain relief by audita querela (Bacon's Abridgment [Am Ed. 1868] vol. 1, 514), and let the law take its course.

There will be an order that all orders and directions heretofore entered staying or delaying execution be revoked.