### DENTON v. BAKER.

#### (Circuit Court of Appeals, Ninth Circuit. February 6, 1899.)

#### No. 447.

1. JUDGMENTS—PARTIES—VACATION—RECEIVERS.
    Though not a party to a suit against the bank in a state court, the receiver of a national bank may appear in that court, and contest the validity of the judgment.

2. SAME—EQUITABLE RELIEF—LACHES.
    A judgment was fraudulently obtained in a state court against a national bank without making a receiver thereof a party. The receiver learned of it a few days later, but took no action in the state court to contest the judgment for nearly two years, the time expiring in the meanwhile within which he might move that court to vacate the judgment for fraud, and his application therein was denied. *Held*, that he was guilty of laches, and equity would not annul the judgment.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

Frederick Bausman, for appellant.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This was a suit in equity brought in the United States circuit court for the Northern division of the district of Washington, on the 22d day of April, 1896, by the receiver of the insolvent Merchants' National Bank of Seattle, to obtain a decree declaring void a judgment rendered by the superior court of the state of Washington for the county of King in an action brought in that court by David B. Denton against the insolvent bank, after the appointment and qualification of the receiver, and after the latter had taken possession of the bank and its property. To that action the receiver was not made a party, and knew nothing of the suit until after the rendition of the judgment, which was for the sum of $29,-716. That action was brought by Denton, as the assignee of a claim held by one Angus Mackintosh, who was the president of the insolvent bank, and the summons in the action was served upon one William T. Wickware, who was its cashier. Wickware put the summons in a pigeonhole, claims to have mentioned the matter to Mackintosh and to one Meserve, who had some employment under the receiver, and paid no further attention thereto. There was accordingly no appearance to the action on the part of the bank or of the

receiver, and the judgment went by default. The record in this suit shows that the Mackintosh claim, upon which the action in the state court was based, grew out of these facts: Mackintosh, as has been said, was the president of the Merchants' National Bank. He was also a stockholder and director of a corporation styled "Sidney Sewer-Pipe & Terra-Cotta Works," of which corporation Denton was also a stockholder and director. Its principal place of business, as well as its principal property, was located in Kitsap county, state of Washington. It had also some property in the county of King. It had issued certain mortgage bonds, of the face value of $25,000, which were owned by Mackintosh. It had never paid a dividend on its stock, and had been so unsuccessful in its business as to cause it to suspend operations. On the 15th day of April, 1893, Mackintosh brought suit in the superior court of King county, Wash., against the Sidney Sewer-Pipe & Terra-Cotta Works, for the sum of $47,000, on certain of its promissory notes, in which action, upon admissions of the defendant, judgment was thereafter entered in favor of the plaintiff for $48,000; upon which judgment, on the 19th day of May following, two executions were issued, one to the sheriff of King county and the other to the sheriff of Kitsap county, under the latter of which executions a sale was made, on the 11th day of July, 1893, of all of the property of the Sewer-Pipe & Terra-Cotta Company in Kitsap county, to Mackintosh, for $1,487.87; and on the 7th day of July, 1893, a sale was made to Mackintosh, under the King county execution, of all of the real property of the company, situated in King county, for the sum of $10, together with certain personal property of the defendant to the writ, for the sum of $130. The sheriff's certificates issued in pursuance of these sales were by Mackintosh assigned to Wickware, the cashier of the bank, who subsequently received the sheriff's deeds for the property, and thereafter conveyed the property by deed to the wife of Mackintosh. A few days after the sheriff's sales, to wit, July 26, 1893, at a meeting of the board of directors of the Merchants' National Bank, there was entered upon the minutes of the board the following:

"The cashier reported that he had procured the following accommodation and advances for the use of the bank in keeping up its funds, to wit, $20,000 from Wells, Fargo & Co.'s Bank of San Francisco, $10,000 rediscounts from First National Bank of Chicago, $26,000 from the National Park Bank of New York, and that additional notes were in New York, and in transit to New York for rediscount; that, in order to procure the rediscount by the National Park Bank of notes sent to said bank on June 30th last, it was necessary to deposit collateral security with the same, and that he borrowed from Angus Mackintosh, the president of the bank, $25,000 first mortgage notes or bonds, issued by the Sidney Sewer-Pipe & Terra-Cotta Works, and used the same for such collateral. On motion, the action and proceedings of the cashier in borrowing money and rediscounting the bank's paper, for the purpose of keeping the bank in funds, was ratified and confirmed. On motion, the action of the cashier in borrowing twenty-five thousand dollars securities from A. Mackintosh, and used as collateral at the National Park Bank of New York, for the benefit of his bank, was ratified and confirmed; and the cashier was authorized and directed to make and deliver to said Mackintosh proper vouchers for the securities named, and acknowledging the bank's indebtedness to said Mackintosh for the value thereof, which indebtedness is to be retired by the return of the securities on or before January 1, 1894."

On the same day, and in professed compliance with the foregoing resolution, the cashier, Wickware, issued to the president, Mackintosh, this instrument:

"Merchants' National Bank.   United States Depositary.

"$25,000.00.                              Seattle, Wash., July 26th, 1893.

"This is to certify that the Merchants' National Bank of Seattle is indebted to Angus Mackintosh in the sum of twenty-five thousand dollars, gold coin, and interest thereon at the rate of eight per cent. per annum from the 1st day of July, 1893; the same being for twenty-five (25) $1,000 each first mortgage gold bonds and coupons of the Sidney Sewer-Pipe & Terra-Cotta Works, borrowed by this bank from said Mackintosh for use as collateral security in obtaining the rediscount of paper at the National Park Bank New York, where said bonds are now deposited as collateral security for the use of this bank. The said bonds and coupons are to be returnable to said Mackintosh on or before January 1st, 1894; otherwise to be paid for in gold coin, with interest as hereinabove stated.   This was done and executed by order of the board of directors of this bank at a meeting of said board held this 26th day of July, A. D. 1893.

"[Seal.]               The Merchants' National Bank of Seattle, Washington,
                            "By Wm. T. Wickware, Cashier."

W. H. Reeves, a director of the bank, testified that there was no discussion in regard to the resolution of July 26, 1893, but that Mackintosh did all the talking, and that, after the adjournment of the meeting of the directors, he and one Agen, another director, talked the matter over, and, said the witness:

"We both agreed that we regarded the bonds as of no value; but they were tacked on to the other securities, which had been put in the hands of the National Park Bank of New York, and added to those securities, to make an impression upon the people abroad as increasing the security."

And there is other testimony in the record going to show that the bonds were of very little, if any, value.

After the complainant in the present suit was appointed and qualified as receiver of the bank, to wit, on the 15th day of August, 1895, Mackintosh presented to him a claim for $29,250, based upon the foregoing instrument, executed by Wickware as cashier, which the receiver rejected, and it is this claim which he assigned to Denton, who subsequently, and on September 27, 1895, presented it to the receiver, with a like result, and upon which Denton afterwards commenced his action against the bank in the state court of King county, Wash., and recovered the judgment already mentioned.

If we were free to decide this cause upon the merits, we would not have the slightest difficulty in holding the claim upon which the judgment here sought to be annulled was entered, as well as the judgment itself, fraudulent and void, as against the stockholders and creditors of the insolvent bank, and in affirming the decree appealed from.   But, unfortunately, through the neglect of the receiver, the rights and interests of those parties appear to be charged with this claim and judgment, without any apparent hope of relief. Certainly, there can be none in the present suit, and for these reasons: Baker became receiver on the 19th day of June, 1895.   The judgment in the action of Denton against the bank was rendered on the 30th day of November, 1895, notice of which judgment the receiver, in his testimony, admits to have received a few days after

its rendition. To get rid of that judgment, the receiver had the opportunity and the means, by proceeding in the court in which the judgment was rendered. It is provided by the statutes of the state of Washington (2 Hill's Ann. Code, § 1393) as follows:

"The superior court in which a judgment has been rendered * * * shall have the power, after the term at which said judgment * * * was made, to vacate or modify such judgment: * * * (3) [For] * * * irregularity in obtaining the judgment. * * * (4) For fraud practiced by the successful party in obtaining the judgment. * * *"

And, by section 1395 of the same Code, the proceeding to that end may be commenced within one year after the rendering of such judgment.

"The power of a court of equity to relieve against a judgment," said the supreme court in Brown v. Buena Vista Co., 95 U. S. 157, 159, "upon the ground of fraud, in a proceeding had directly for that purpose, is well settled; and the power extends, also, to cases of accident and mistake. But such relief is never given upon any ground of which the complainant, with proper care and diligence, could have availed himself in the proceeding at law. In all such cases, he must be without fault or negligence. If he be not within this category, the power invoked will refuse to interfere, and will leave the parties where it finds them. Laches, as well as positive fault, is a bar to such relief." To the same effect are many decided cases and text writers. We cite a few of them: Knox Co. v. Harshman, 133 U. S. 152, 10 Sup. Ct. 257; Nougue v. Clapp, 101 U. S. 551; Graham v. Railroad Co., 118 U. S. 161, 6 Sup. Ct. 1009; Furnald v. Glenn, 56 Fed. 373; Association v. Lohmiller, 20 C. C. A. 274, 74 Fed. 23; Ede v. Hazen. 61 Cal. 360; 1 Black, Judgm. (1st Ed.) § 361; Freem. Judgm. §§ 486, 489, 490, 495; Story, Eq. Jur. §§ 894, 896.

Although not made a party to the action brought by Denton in the state court, the right of the receiver, based upon a seasonable application, to appear in that court and contest the validity of the judgment, does not admit of doubt. Bank v. Colby, 21 Wall. 609; Denton v. Baker, 24 C. C. A. 476, 79 Fed. 189, 192; Denton v. Bank (Wash.) 51 Pac. 473. The receiver, therefore, had ample opportunity to take appropriate proceedings in the very action in which the judgment was rendered, to contest its validity on any ground of fraud or irregularity that existed. Instead of resorting to that forum, and while the right to do so still existed, he brought the present suit in the court below. That a court of equity will not interfere, under such circumstances, is thoroughly well settled, as will be seen by a reference to the authorities already cited.

Not only did the receiver allow the period prescribed by sections 1393 and 1395 of the Washington Statutes (2 Hill's Ann. Code) to pass without making any motion for the annulment of the judgment, but he made no appearance in that court at all until March 10, 1897, nearly two years after the rendition of the judgment against the bank, at which time he applied to the superior court which gave the judgment to vacate and set it aside, and to permit him to file an answer and defend as such receiver; in support of which he filed an affidavit of his own, in which, according to the opinion of the su-

preme court of Washington, rendered upon his appeal from the refusal of the trial court to grant his motion, he set forth, substantially, "that the securities under the contract between the bank and Mackintosh were worthless, and that Mackintosh was a stockholder in the bank and president thereof; that, at a meeting of the directors of the bank, the cashier was authorized to deliver to Mackintosh proper vouchers for the securities, acknowledging the bank's indebtedness to Mackintosh for the value thereof, which indebtedness was to be retired by the return of the securities on or before January 1, 1894." "The affidavit," added the supreme court of Washington, "charges collusion between the cashier of the bank and Mackintosh, in that the cashier did not make known the service of summons upon the bank to the receiver, Baker, and sets up that many facts set forth in the complaint of plaintiff were untrue." Denton v. Bank (Wash.) 51 Pac. 473. The supreme court of Washington held that the only grounds upon which the receiver could, at so late a date, make the motion, are found in section 221, 2 Hill's Ann. Code, as follows:

"The court may * * * upon affidavit showing good cause therefor, after notice to the adverse party, * * * upon such terms as may be just, and upon payment of costs, relieve a party, or his legal representatives, from a judgment * * * taken against him through his mistake, inadvertence, surprise, or excusable neglect."

Construing this section of the statute, the court said:

"The mistake, inadvertence, surprise, or excusable neglect mentioned in section 221 of the Code, supra, all relate to facts which were unknown to the moving party prior to the time of the entry of the judgment, or misunderstood by such party. The receiver was charged with knowledge of plaintiff's claim against the insolvent bank, and that plaintiff might sue upon it in the superior court and obtain judgment therein; and whether he knew of the actual pendency of the action would, under all the facts disclosed in this record, be immaterial. A seasonable application to that court, after the entry of judgment, would present an entirely different proposition. While cases may be found where long delays have been excused in the moving party in making an application to vacate a judgment, no case has been called to our attention where the facts are similar to those in the case under consideration. We do not discover any excusable neglect in the receiver in making this application. On the contrary, a fair inference, from all his acts, in relation to the judgment entered, is that he had deliberately determined not to make such an application or to appear in the superior court, and afterwards changed his intention when the motion to vacate was made. We think, from the record presented here, that the order of the superior court denying the application to vacate the judgment was correct, and it is affirmed."

By this result the complainant is bound. Embry v. Palmer, 107 U. S. 317, 2 Sup. Ct. 25; Folsom v. Ballard, 16 C. C. A. 593, 70 Fed. 12; Hendrickson v. Bradley, 29 C. C. A. 303, 85 Fed. 508; 1 Black, Judgm. § 362.

In respect to the cross bill, it is sufficient to refer to what was held by this court in Denton v. Baker, 24 C. C. A. 476, 79 Fed. 189, that the cross complainant's remedy is at law, and not in equity.

It results that the judgment must be reversed, and the cause remanded, with directions to the court below to dismiss both the bill and the cross bill, each party to pay his own costs.