STRAND et al. v. GRIFFITH et al.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1906.)

No. 1,078.

JUDGMENT—STATE COURT—EFFECT IN FEDERAL COURTS.

Where, in a suit in a state court to foreclose a mortgage on a stock of goods, the mortgagors alleged false and fraudulent representations of persons who co-operated with the mortgagee in selling the goods as to the quality, quantity, and value thereof, and a decree in favor of the mortgagee on such issue was affirmed by the Supreme Court of the

state, a bill was not maintainable by the mortgagors in the federal court to set aside a deficiency judgment recovered by such mortgagee, in the suit in the state court, etc., on the ground that the mortgagors did not discover until several months after the decision in such case that the mortgagee was a party to a conspiracy to commit the fraud alleged as a defense to such suit.

[Ed. Notes.—Conclusiveness of judgments as between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

See 135 Fed. 739.

The appellants were the complainants in a bill, the substance of which is as follows: The appellants were husband and wife and were residing at Whatcom, Wash., and were possessed of real estate of the value of $41,000. They were desirous of engaging in the dry goods business. Their desire becoming known to the defendant J. M. Griffith, he, with Cyrus A. Campbell, Edwin L. Buck, and Geo. W. Skinner. on or about October 29, 1896, entered into a fraudulent conspiracy to cheat and defraud the appellants by selling to them a worthless stock of merchandise then in a warehouse in Minneapolis, and belonging to the said Griffith. The appellants were entirely lacking in experience in the dry goods business, as the defendant Griffith and his co-conspirators well knew. The said Buck and Campbell, being informed of the fact that the appellants desired to engage in said business, went to them and represented themselves to be commission merchants and jobbers in dry goods, clothing, and furnishing goods, and offered to procure for them a desirable stock of goods in that line, and induced the appellant, Hans B. Strand, to go to Minneapolis for the purpose of purchasing such a stock. On his arrival in Minneapolis, they represented to him that they had in their charge a stock of dry goods, clothing, and furnishing goods of the value of $11,000, invoiced at wholesale prices, and that the same were A No. 1 first-class goods, and belonged to the said Skinner, who was a reliable dry goods merchant in Iowa, but who had been compelled by an accident to close out his business, all of which representations were untrue. The goods belonged to the defendant J. M. Griffith, in whose warehouse they were then stored. In fact, said stock of goods were odds and ends of different stocks of old goods and merchandise which Griffith had picked up at different times and places, and were not new or salable, but were old, shop-worn, faded, moth-eaten, and unsalable, and were not worth $11,000, or more than 10 per cent. thereof, which said conspirators well knew. The said conspirators furnished said appellant Hans B. Strand at Minneapolis what purported to be an invoice of stock of said goods, by which it appeared that said stock consisted largely of high-grade silk and wool goods, etc., of the invoice price of $11,000. The bill sets forth various tricks and devices of said conspirators to prevent inspection of the goods by said appellant, and alleges that on or about November 6th a contract was entered into, by which the goods were sold to the appellants and they executed two promissory notes to said Skinner, one for $1,000, due December 1, 1896, and one for $2,700, due December 15, 1896, and conveyed to him real estate worth $7,300. The appellant Hans B. Strand returned to Whatcom. The appellants were unable to pay the notes as they matured and the stock remained in the possession of the defendant J. M. Griffith at Minneapolis. About February 1, 1897, Griffith went to New Whatcom and represented to the appellants that he was the owner of the agreement and of the two promissory notes and the owner of the stock of goods by purchase and assignment from Skinner. About this time the appellants borrowed from Griffith the sum of $500 to pay off an indebtedness on a part of the real estate which they had conveyed to Skinner. It was estimated that the amount then owing by the appellants was $4,800. On February 15, 1897,

they entered into an agreement with Griffith by which the latter agreed to deliver the goods to them upon their executing to him a mortgage upon their real estate and a chattel mortgage upon the stock of goods to secure said debt of $4,800. This agreement was carried out. Before signing said agreement, said appellant Hans B. Strand objected, and stated that he had not as yet examined said goods and had relied on the representations of the defendants, all of which representations he detailed to said Griffith and demanded to know of him if he knew of his own knowledge that the goods were as thus represented and corresponded with said invoice, and that Griffith fraudulently and falsely assured him that said goods were in every respect as they had been represented, and consisted of an A No. 1 first-class assorted stock, worth the sum of $11,000 at wholesale invoice prices in Minneapolis: Said goods were then at Minneapolis, where they could not be inspected by the appellants. Said representations were relied upon by the appellants. The goods were delivered and received by the appellants at Whatcom, when it was discovered that the most valuable portions of the stock, included in the invoice, such as silk and woolen goods, were entirely missing and the goods were found to be unsalable, old, shop-worn, and moth-eaten ends and remnants, as before stated. Notwithstanding the discovery of the fraud, the appellants attempted to do business as retail merchants with said stock from March until November, 1897, during which time the gross amount of their sales was less than $360. Being then unable to pay their indebtedness to Griffith, they were sued by him in the superior court of the state of Washington for Whatcom county, the result of which suit was that the mortgages were foreclosed and all the property was sold to the defendant Griffith for a price less than the amount due, and a deficiency judgment for the excess was entered up against the appellants. The sale was confirmed, and thereafter a sheriff's deed was executed which conveyed to the said Griffith all the appellants' real estate, whereby the scheme of fraud of said Griffith and his confederates was consummated. The bill further alleges that immediately upon finding said stock to be worthless the appellant Hans B. Strand wrote said Griffith and informed him thereof and demanded that Griffith make good his loss, and that it was not until some time in the month of November, 1898, that the appellants discovered or became aware of said fraudulent conspiracy to cheat them out of their real estate, nor did they until that time know or have reason to know or believe that said Griffith had any relation to or attitude toward them in the premises except that he had loaned money upon said goods so stored in his warehouse in Minneapolis. The prayer of the bill is that the deficiency judgment be wholly vacated and set aside, and that the defendants be compelled to reconvey said real estate to the appellants. To this bill the defendants demurred for want of equity and on the ground that it appeared therefrom that title to all real estate formerly belonging to the appellants was vested in the defendant Griffith by virtue of the sale and execution out of said superior court of Whatcom county, Wash., on foreclosure of a mortgage on the whole thereof, which foreclosure was duly had in pursuance of the laws of the state of Washington.

Greene & Griffiths, for appellants.

Dorr & Hadley and Kerr & McCord, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The bill presents the question whether a Circuit Court of the United States can revise or set aside a final decree rendered by a state court which had jurisdiction of the parties and of the subject-matter of the suit, upon the ground that the decree was obtained by fraud, when the injured party has had an opportunity to apply to the state court to revise the decree. This question has been determined adversely to

the contention of the appellants by the Supreme Court, in Graham v. Boston, Hartford & Erie R. R. Co., 118 U. S. 161, 6 Sup. Ct. 1009, 30 L. Ed. 196, and Nougue v. Clapp, 101 U. S. 551, 25 L. Ed. 1026, and by this court in Denton v. Baker, 93 Fed. 46, 35 C. C. A. 187. See, also, 1 Black on Judgments, § 297. The appellants base their demand on the relief which is sought on the fact that they did not discover until several months after the decision of the case in the state court that J. M. Griffith was a party to the conspiracy which is set forth in the bill. But that fact, if material, could afford no excuse for their failure to apply to the state court on the discovery of the fraud, and it presents no obstacle to the application of the rule. The appellants cite the decision of the Supreme Court of Washington in Griffith v. Strand, 19 Wash. 686, 54 Pac. 613, and we are permitted, therefore, to refer to that decision and to the light it affords on the questions which were presented on the hearing of the case in the superior court. In that case the appellants as defendant to the foreclosure suit set up in their answer the false and fraudulent representations of Campbell, Buck, and Skinner which are alleged in the bill in the present case. A demurrer to the answer was sustained by the superior court. On appeal to the Supreme Court of the state the question to be determined was whether the trial court had erred in sustaining the demurrer. The Supreme Court, referring to the allegations of the answer, held that the purchaser of a stock of goods cannot avoid the sale on the ground of fraud or false representations as to the quantity, quality, and value of goods, when there was no fiduciary relation between the parties, and when it was in the purchaser's power to readily determine the truth or falsity of such representations by an inspection of the goods. It is true that in that case no averment appears to have been made in the answer that those representations were repeated and affirmed by J. M. Griffith, and were relied upon by the appellants at the time when the mortgages were executed and at a time when there was no opportunity to inspect the goods, but those facts were as well known to the appellants at the time when they made their defense to the foreclosure suit as now, and they should have been alleged in their answer.

The additional averment that the appellants did not discover until November, 1898, that J. M. Griffith was the owner of the goods and a party to the conspiracy to defraud them from its inception does not appear to us to present matter which strengthens or is essential to the appellants' case. But, if we are wrong in this, there can be no doubt that it is matter that should have been presented to the superior court upon its discovery by the appellants a few months after the final decree of that court, and that it cannot be the basis of relief in this court presented as it is by a bill filed herein more than five years after the date of that decree. There is no equitable ground on which the bill can be sustained.

The decree of the Circuit Court is affirmed.