CHRISTY, County Treasurer, et al. v. ATCHISON, T. & S. F. RY. CO.

(District Court, D. Colorado. June 11, 1914.)

No. 6180.

1. JUDGMENT (§ 460*)—VACATION—EQUITY JURISDICTION—FRAUD—ACCIDENT —MISTAKE—LACHES.

Though equity has jurisdiction to vacate a judgment obtained through fraud, accident, or mistake, the defendant in the law action seeking such relief must show, on the face of his bill, that he had a good defense on the merits to the law action, which he was prevented from availing himself of by fraud, accident, or mistake, unmixed with negligence of himself or his agents, and that he was not guilty of laches.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 879, 880, 882–891; Dec. Dig. § 460.*]

2. JUDGMENT (§ 460*)—VACATION—EQUITY SUIT—MERITS.

Where a bill to set aside a judgment alleged that the same was recovered by virtue of an improper stipulation entered into by complainant's former attorney without authority, but did not show that complainant had a good defense on the merits to the claim on which the judgment was recovered, it was fatally defective.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 879, 880, 882–891; Dec. Dig. § 460.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**8. JUDGMENT (§ 456\*)—VACATION—EQUITY JURISDICTION—LACHES.**

On March 4, 1908, defendant railroad company instituted an action at law against P. county to recover $16,686.61 for alleged excessive taxes paid under protest. The case was tried on September 9, 1911, and judgment recovered by the railroad company on which the county treasurer on October 15, 1912, paid an installment of $1,010.63. The tax in question was for the year 1905, and no steps were taken to set aside the judgment until September, 1913, when complainant sued in equity for the vacation of the judgment. The amended bill showed that complainant had knowledge of the judgment as early as April or May, 1912. *Held*, that complainant was barred from equitable relief by laches.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 863–866; Dec. Dig. § 456.\*]

In Equity. Suit by R. L. Christy, as County Treasurer of the County of Prowers, Colo., and the Board of County Commissioners, against the Atchison, Topeka & Santa Fé Railway Company. Judgment for defendant.

Allen M. Lambright, of Las Animas, Colo., for plaintiffs.

Henry T. Rogers and Rogers, Ellis & Johnson, all of Denver, Colo., for defendant.

LEWIS, District Judge. On March 4th, 1908, the Atchison, Topeka & Santa Fé Railway Company (defendant here) instituted in the Circuit Court for this district an action at law against Prowers County to recover $16,686.61, which amount the railway company claimed to have been collected from it as in excess of the taxes justly due by it to said county for the year 1905. The complaint alleged that two of the plaintiff's engines had been seized under distraint warrant on a claim that the plaintiff in that case owed in taxes $25,130.85, and that in order to obtain the release of said engines it was compelled, under protest, to pay the amount demanded, when as a matter of fact only the sum of $8,444.24 was justly due from it as its taxes for that year. As a basis for recovery the railway company alleged in that complaint that its property in Prowers County had been greatly overvalued for the purpose of making the tax levy, that all other property in the county which was assessed for that year was greatly undervalued, and that the officers of the county who had to do with making the levy knowingly and purposely omitted from levy and taxes for that year property in the county of the value of at least $1,000,000. It thus set forth that the burden of taxation had been placed unequally, that under the system and methods adopted and followed by the county and its officers the county had violated the State Constitution and statutes and the railway company was entitled to recover back the excess which had been placed against its property and which it was compelled under protest to pay.

The defendant in that case filed its answer on May 5th, 1910. On August 8th, 1911, a stipulation in writing, signed by the attorneys for the plaintiff and by the attorneys for the defendant in that action was filed, in which was set forth the facts, in so far as they were agreed upon between the parties, reserving, however, the right to each party to introduce evidence if they so desired. This stipulation set forth the

aggregate value of the stock and bonds issued and then outstanding by the railway company, the value of other property of the railway company and the amount which should be deducted from the value of its plant ascertained on the stock and bond basis, thus leaving the net value of its plant ascertained on that basis for the purpose of taxation, its total mileage and its mileage within Prowers County. These were material and necessary facts for the purpose of arriving at the value of the segment of the railway in Prowers County under the plan of taxation of such property as prescribed by the Colorado Statute. The stipulation then set forth that other property was undervalued and under-assessed and did not exceed twenty-six per cent. of its full cash value. The stipulation then proceeded to work out and set forth in detail the excess value placed on the railway property within the county for that year as compared with the value placed on other taxable property within the county, and led up to the conclusion, without stating it in figures, the amount of the excess burden that had been placed on the railway company for that year.

The case came on for trial on September 9th, 1911, a jury was waived in writing, and the Circuit Court entered this judgment:

At this day comes the plaintiff, by Henry T. Rogers, Esq., its attorney, and the defendants, by William A. Merrill, Esq., their attorney, also come.

And this case comes on now to be tried to the court without a jury, pursuant to a written stipulation thereto herein filed.

And the court having heard the evidence produced herein and the arguments of counsel, doth find the issues herein joined in favor of the plaintiff, and doth hereby assess the plaintiff's damages at the sum of fifteen thousand four hundred and thirty-seven dollars and five cents ($15,437.05).

Wherefore, it is considered by the court that the plaintiff do have and recover of and from the defendants the sum of fifteen thousand four hundred and thirty-seven dollars and five cents ($15,437.05), its damages by it sustained by occasion of the premises in its complaint herein set forth and alleged, in form aforesaid assessed, together with its costs by it in this behalf laid out and expended to be taxed.

On October 15th, 1912, the County Treasurer of Prowers County sent his check to the clerk of the court for $1,010.63 as part payment on the judgment, and it was applied, and that amount, less small items for clerk's cost, was turned over to the plaintiff on October 17th, 1912.

On September 15th, 1913, the complainants in this case filed their bill against the railway company for the purpose of having the judgment in the law action set aside and vacated.

The defendant answered the bill and embodied in the answer a demurrer or motion to dismiss, which coming on first to be heard the complainants thereupon sought and obtained leave to file an amended bill, and to the amended bill the defendant has filed a motion to dismiss, which presents the matter for present consideration.

The amended bill sets out the substance of the complaint in the law action. This is followed with the substance of the answer in the law action, which latter admitted the distraint of the two engines and the demand for the payment of the $25,130.85 taxes, interest and penalties for the year 1905, admitted the payment of the last-named sum and the release of the engines thereupon, but denied that any part of that

amount was illegal or not due and payable as taxes by the railway company; denied that the tax was excessive as compared with the tax laid against other property in the county; averred that the railway property was not assessed at more than twenty-five per cent. of its actual cash value for the year 1905; averred that the assessor of the county did not undervalue other property in the county as compared with the value placed on railway property, and further sets out denials contained in the answer in the law action of the material allegations in that complaint, and allegations that the assessment and taxes against the railway property as compared with other property in the county were fair, equitable and legal.

The amended bill then sets forth the substance of the stipulation of facts filed in the law action, and alleges on information and belief that the railway company will not be able to prove it was entitled to the deductions granted by the stipulation from the value of the system reached on the stock and bond basis; that the stipulation agreed on 9269.1 miles as the total mileage of the railway company for the purpose of ascertaining the average value per mile of the mileage in Prowers County, whereas 8119.04 miles were declared by the Court of Appeals of this Circuit (A. T. & S. F. R. Co. v. Sullivan, 173 Fed. 456, 97 C. C. A. 1) to be the total mileage of the defendant's railway for the year in question, and its value per mile for the purpose of taxation for that year $52,663.92, and that applying these findings of the Court of Appeals the defendant's property in Prowers County was not excessively valued and taxed by the assessor for the year 1905.

The amended bill alleges that when the law action was called for trial it was submitted on the stipulation alone, that no other testimony was offered and that the attorneys for the respective parties advised the court that under the stipulation, judgment should go for plaintiff in that action in the sum of $15,437.05, which was accordingly entered. That the facts admitted in the stipulation in the law action were in contradiction of the averments and denials in the answer in that action; that plaintiffs have stated to their solicitor in this suit what they believe to be the evidence that will be produced in support of the answer in the law action as well as what they believe will be the plaintiffs' evidence in said action, and are advised that they had a good and meritorious defense in said former action; that they offer to prove that the attorneys for the defendant in the law action had no authority to enter into said stipulation; that in fact they were not authorized by the defendants in the law action to enter into any stipulation nor to admit or agree to any of the facts therein stated.

It is alleged that the defendants in the law action did not know that judgment had been taken in that action until about the month of April or May, 1912; that they thereupon inquired of the attorney who had signed the stipulation for the defendants and that he advised the defendants not to concern themselves about the judgment, that it would be settled for a few hundred dollars and not to exceed $2,000; that two of the county commissioners went out of office in January, 1913, and were succeeded by two of the present members of the board, and

when the new board was organized they instructed their attorney to ascertain by what means the judgment had been taken in the law action, and that the present commissioners first ascertained on May 18th, 1913, that the stipulation in the law action had been entered into, and that they did not learn until July, 1913, that none of the commissioners in office, when the stipulation was made, had agreed to it or authorized the attorney, who appeared for the county, to sign it.

The prayer is that the stipulation be set aside and the judgment in the law action be vacated, and that the present commissioners of the county be substituted in the law action as defendants instead of those who were commissioners when that action was brought.

The defendant moves to dismiss the bill on the ground that it does not show that the plaintiffs are entitled to any equitable relief.

[1] It is a generally recognized principle that a court of equity has jurisdiction to vacate and set aside a judgment in an action at law obtained through fraud, accident or mistake. The defendant in the law action, when he comes into equity for that purpose must, however, show on the face of his bill that he had a good defense on the merits to the law action which he was prevented in availing himself of by fraud, accident, or mistake, unmixed with negligence of himself or his agents and that he was not guilty of laches. Knox County v. Harshman, 133 U. S. 152, 154, 10 Sup. Ct. 257, 33 L. Ed. 249; White v. Crow, 110 U. S. 183, 187, 4 Sup. Ct. 71, 28 L. Ed. 113; Life Association v. Lohmiller, 74 Fed. 23, 20 C. C. A. 274; Town of Andes v. Millard (C. C.) 70 Fed. 515; Phillips v. Negley, 117 U. S. 665, 675, 6 Sup. Ct. 901, 29 L. Ed. 1013; Village of Celina v. Bank, 68 Fed. 401, 15 C. C. A. 495; Young v. Sigler (C. C.) 48 Fed. 182; Denton v. Baker, 93 Fed. 46, 35 C. C. A. 187; Kimberly v. Arms (C. C.) 40 Fed. 548, 558; Marshall v. Holmes, 141 U. S. 589, 596, 12 Sup. Ct. 62, 35 L. Ed. 870.

The foregoing authorities amply sustain the principle announced, and we turn again to the amended bill. It does not allege or even intimate that either fraud or collusion was practiced in entering into the stipulation, nor does it allege that any mistake or accident, in the sense required was made or fallen into by both or either of the parties or their counsel. Indeed, counsel for complainant did not claim any of these grounds for equitable relief in argument on the motion. Neither does the bill allege facts which show that the defendants in the law action had a good defense in that case on the merits. It is true that it is alleged that complainants here do not believe that the plaintiff in the law action would have been able to sustain its complaint, that complainants have told counsel the facts that they believe they could prove in defense in the law action and that he advises that they have a good defense to that action, and that they are able to bring evidence to establish the facts set up in the answer in that case; but this is far from showing on the face of the bill facts from which the court can conclude, if the facts thus alleged be established, that the defendants in the law action had a good defense on the merits in that case. The bill instead of setting out facts which would show that the defendants

had a good and meritorious defense to the law action, has plead only the belief and conclusions of the complainants and their counsel. The nearest approach to a statement of anything that would indicate a meritorious defense are the allegations in reference to what was found by the Court of Appeals in the Sullivan Case; but the bill does not allege that those conclusions were the true facts, nor that they can be established.

The exhibit which was offered in evidence in the Sullivan Case, and from which the Court of Appeals reached its conclusion as to the total mileage of railway, has been examined in the files in that case, and it is true that on certain pages of the exhibit the mileage stated in the opinion of the Court of Appeals is set forth as being the number of miles owned by the railway company, but on other pages of the same exhibit is found additional mileage of lines which were controlled by the railway company during that year by ownership of stock and bonds in such other companies, which additional mileage added to the mileage stated in the opinion of the Court of Appeals makes substantially the mileage agreed upon in the stipulation. It is not necessary to inquire which of the two mileages—the one stated by the Court of Appeals and the other in the stipulation—is the correct mileage under the requirements of the state statute for purposes of taxation; and we make no inquiry as to that, but it clearly appears from the exhibit what the basis was on which counsel in the law action reached the total mileage as set forth in the stipulation. This difference in mileage, and the further fact that the stipulation conceded certain deductions in the value of property owned by the railway company not a part of its system and not taxable and not to be considered in reaching a value of the mileage within the state for 1905, obviously renders the mileage value found in the Sullivan Case far in excess of the value that could be reached from the agreed facts in the stipulation. And in addition to that, this suit is between different parties from the one with which the Court of Appeals had to deal. So that the allegations of the bill, as to the conclusions that may have been reached in the Sullivan Case, are wholly irrelevant to this inquiry.

[2] But counsel for complainant says that the case made by the amended bill is on an entirely different principle from the one established by the authorities above cited; that it is rested on the allegations that the attorneys for the defendant in the law action entered into the stipulation without any authority to do so from their client, and thus denied the defendant in that case an opportunity to make its defense. There are several answers to this: (1) If it be conceded that the stipulation were void for the reason that no express authority had been given counsel to make the stipulation, that alone would not be sufficient to call forth equitable power to annul the judgment. The same conclusion and the same judgment might again follow in the law action, if it were vacated, and thus the necessity of it appearing from the bill that the defendants in that action had a good defense on the merits. (2) In Village of Celina v. Bank, supra, the Court of Appeals for the sixth circuit, through Judge Severens, said (68 Fed. 403, 15 C. C. A. 497):

"A court of chancery has jurisdiction upon a bill filed for the purpose of setting aside a judgment and furnishing an opportunity for another trial where the judgment has been suffered by a clear mistake into which the party against whom the judgment was rendered has fallen without any fault on his part. But in such case 'a litigant is required to have exercised the greatest degree of watchfulness over the progress of his suit in court.' 1 Black, Judgm. § 387; Truly v. Wanzer, 5 How. 142 [12 L. Ed. 88]; Crim v. Handley, 94 U. S. 652 [24 L. Ed. 216]; 3 Pom. Eq. Jur. § 134, and note; 2 Story, Eq. Jur. § 887. * * * We do not think that the allegation in the petition that the petitioner 'could not with reasonable diligence have discovered the fact,' is supported by the facts there alleged."

The Court of Appeals for the seventh circuit, in considering this subject, in Life Association v. Lohmiller, supra, applies the announcement of the Supreme Court in Creath's Administrator v. Sims, 5 How. 192, 204 (12 L. Ed. 111), thus:

"That whosoever would seek admission into a court of equity must come with clean hands; that such a court will never interfere in opposition to conscience or good faith; and again, and in intimate connection with the principles just stated, that it will never be called into activity to remedy the consequences of laches or neglect, or the want of reasonable diligence."

In Brown v. County of Buena Vista, 95 U. S. 157, 159 (24 L. Ed. 422), it is said:

"The power of a court of equity to relieve against a judgment, upon the ground of fraud in a proceeding had directly for that purpose, is well settled.

"The power extends also to cases of accident and mistake. But such relief is never given upon any ground of which the complainant, with proper care and diligence, could have availed himself in the proceeding at law. In all such cases he must be without fault or negligence. If he be not within this category, the power invoked will refuse to interfere, and will leave the parties where it finds them. Laches, as well as positive fault, is a bar to such relief. Duncan v. Lyon, 3 Johns. Ch. (N. Y.) 351 [8 Am. Dec. 513]; Marine Insurance Co. v. Hodgson, 7 Cranch. 332 [3 L. Ed. 362]; Story, Eq. Jur. §§ 894–896; Bigelow on Estoppel, 151; Freeman on Judgments, §§ 486, 489, 490, 495."

And again on page 160 of 95 U. S. (24 L. Ed. 422):

" 'Nothing can call forth'—a court of equity—'into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced and, therefore, from the beginning of this jurisdiction there was always a limitation of suits in this court.' (Citing cases.)

"The law of laches, like the principle of the limitation of actions, was dictated by experience, and is founded in a salutary policy. The lapse of time carries with it the life and memory of witnesses, the muniments of evidence and other means of proof. The rule which gives it the effect prescribed is necessary to the peace, repose and welfare of society. A departure from it would open an inlet to the evils intended to be excluded."

[3] Applying these principles I think the bill discloses that the defendants in the law action were clearly guilty of laches. The tax in question in that case was for the year 1905; the judgment was rendered in September, 1911, and the bill to vacate it was not filed until September, 1913. Nine years have now passed since the levy and assessment were made. Much of the property in Prowers County, in the year for which the tax was levied, has been disposed of, values have

changed, some of the witnesses who were familiar with values at that time cannot now likely be had, and those that can be had will necessarily recall with difficulty conditions and values at that time. And it is reasonable to believe that the plaintiff in the law action cannot, with the same convenience and readiness, establish the facts now that it could have established at that time. The county recognized and approved the rendition of the judgment by paying $1010.63 on it in October, 1912, and the amended bill shows that it knew as early as April or May, 1912, that the judgment had been rendered. These facts convince that it was guilty of laches and negligence in delaying to challenge the judgment until the fall of 1913; and (3) Counsel who signed the stipulation were employed to defend the case. This gave them full authority to conduct the trial and for that purpose to investigate as to what the real facts were in the controversy, and after having ascertained the facts, to dispense with the cost and necessity of calling witnesses, by admitting such facts. The stipulation on the facts served this purpose. In Oscanyan v. Arms Co., 103 U. S. 261, at page 263, (26 L. Ed. 539), it is said:

"In the trial of a cause the admissions of counsel, as to matters to be proved, are constantly received and acted upon. They may dispense with proof of facts for which witnesses would otherwise be called. They may limit the demand made or the set-off claimed. Indeed, any fact, bearing upon the issues involved, admitted by counsel, may be the ground of the court's procedure, equally as if established by the clearest proof. And if in the progress of a trial, either by such admission or proof, a fact is developed which must necessarily put an end to the action, the court may, upon its own motion, or that of counsel, act upon it and close the case."

See, also, Wilson v. Spring, 64 Ill. 14, and Taylor v. Mortgage Co., 106 Ga. 238, 32 S. E. 153.

The motion to dismiss the bill will be sustained.

It is so ordered.