REBECCA SHORT et al., Appellants, v. FIRST NATIONAL BANK et al., Appellees.

No. 40441.

OCTOBER 14, 1930.

*Purley Rinker* and *Evans & Garrett,* for appellants.

*Bracewell, Murrow & Poston* and *T. W. Miles,* for appellees.

DE GRAFF, J.—At the April term, 1929, of the district court of Iowa in and for Wayne County, the plaintiffs, Rebecca Short, Mary Carr, and George Alexander, filed the instant petition, alleging that, on March 2, 1916, there was deposited by one W. J. Alexander, administrator, to the credit of the plaintiffs, in the First National Bank of Corydon, Iowa, the sum of $780, and that no part thereof has ever been paid to the plaintiffs; that, on July 30, 1927, the Commercial National Bank of Corydon succeeded the First National Bank of Corydon, and by contract between them, the Commercial National assumed the deposit liabilities of the First National Bank, and by reason of such agreement, the Commercial National Bank is liable for the amount of the named deposit, together with interest thereon; that defendant R. D. Kaster is trustee of the trust fund for the First National Bank of Corydon, and that he has sufficient assets in his hands as trustee for the payment of the above-named amount. By an amendment to the petition, upon the motion of the defendant Commercial National Bank of Corydon, plaintiff alleged that one W. G. Alexander was the legally qualified and duly appointed administrator of the estate of John H. Alexander, deceased; that the said amount ($780) was left at the First National Bank of Corydon, Iowa, for the plaintiffs herein by W. J. Alexander, administrator, by check reading as follows:

"Corydon, Iowa March 2nd, 1916.
"First National Bank, Pay to the Order of the First National Bank, Corydon, Iowa, Credit of Rebecca Short, Mary

1204

Carr and George Alexander $780.00, Seven Hundred Eighty Dollars, 75% on claim.

"W. J. Alexander, Adm.

[Stamped on face of check.]
"Paid March 2nd, 1916."

It is further alleged that said amount was deposited without the knowledge or consent of plaintiffs, and that same was a trust fund, to be held in trust by said bank for the benefit of plaintiffs, and that plaintiffs have a lien on any property taken over by the Commercial National Bank of Corydon, Iowa, from the First National Bank of Corydon, Iowa, to the extent of $780, together with interest and costs.

By order of court of date February 3, 1930, the trustees, T. W. Miles, R. D. Kaster, and D. L. Murrow, were joined as necessary party defendants in this suit.

The defendant R. D. Kaster, trustee, for separate answer filed a general denial, and further answered by alleging that, as trustee, he is trustee for the benefit only of the Commercial National Bank, which holds his obligation for an agreed amount to make up the deficiency between the assets taken over from the First National Bank and the amount of deposit liability assumed by the Commercial National Bank, and that all the funds and property coming into the hands of Kaster, as trustee, were for the sole and only purpose of securing said obligation referred to; and he alleges that said funds and property are no more than sufficient to take care of said obligation.

Said defendant trustee further answered that, after the disposing, under the terms of the contract, of the assets of the First National to the Commercial National and to this trustee, for the purpose of taking care of the deposit liabilities then on the record of the First National Bank of Corydon, the latter bank was declared insolvent, and placed in the hands of W. R. Payne, as receiver, who, as said receiver, complied with all requirements of the Federal law, in posting and giving notice to creditors, and that, the time for filing claims having expired, said receiver paid out his final dividend, and the receivership was closed, and the receiver discharged, and that the First National Bank of Corydon, Iowa, ceased to be a legal entity. Said defendant trustee prayed that the plaintiffs' petition be dismissed as to him.

Thereafter, the defendant Commercial National Bank filed a general denial to plaintiffs' petition as amended, and prayed that plaintiffs' cause of action be dismissed, with costs. The defendant First National Bank filed no answer to the petition.

The evidence discloses that, on or about January 13, 1915, one John Alexander died intestate, a resident of Wayne County, Iowa, and that W. J. Alexander, brother of the deceased, was appointed and qualified as administrator of the decedent's estate. The plaintiffs in this cause are the two sisters and the brother of the deceased John Alexander and of his administrator, W. J. Alexander.

On March 2, 1916, W. J. Alexander, administrator, executed a check on the First National Bank of Corydon, payable to its order, as hereinbefore set out. This check in this record was machine-stamped: "Paid March 2, 1916." On March 2, 1916, $780 was paid by the maker of the check to the First National, and was credited on the books of the First National Bank to Rebecca Short, Mary Carr, and George Alexander, and continued to appear on the books of the bank until the 21st day of March, 1924. On that day, the account on the books of the said bank was marked "closed." The plaintiffs testify that they have never received the credit from the First National Bank.

At the time that the defendant banks, to wit, the First National Bank of Corydon and the Commercial National Bank of Corydon, signed the contract of merger (July 30, 1927), the appointment of the receiver Payne (not a party defendant) by the comptroller of currency had not been made. The contract recognized in terms the insolvency of the First National, and recited that the purchasing bank (Commercial National) would take over the liabilities of the First National under the agreement as set out in Schedule 1, attached to the contract. This schedule included checking deposits, time certificates, and demand certificates of deposit. The contract in question also contained a statement of the assets and liabilities transferred by the First National Bank to the Commercial National Bank as of July 30, 1927, and recited: "The assets and liabilities being specifically set out in Schedules A, I, and D attached thereto." Schedule A states the amount of assets and accrued interest assigned to the Commercial National, and furthermore, recites the specific items of assets assigned, and includes a cash item

of $6,638.69. Schedule 1 includes the items of liability heretofore mentioned. Schedule D is not shown in the abstract. The contract also contains Schedule E, which bears the caption "Charged-off Assets," with the following statement: "Assigned by First National Bank to R. D. Kaster, Trustee, amount $42,584.99." In this connection it may be stated that the contract between the two banks is quite specific as to the intent of the parties thereto, and in consummating the transfer, the First National agreed to execute and did execute to the Commercial National its obligation in the sum of $75,000, evidenced by a demand note in said amount, which note was received by the Commercial National "as part of the consideration moving from the First National to the Commercial National for the Commercial National's assumption of the liabilities of the First National as set out in Schedule No. 1."

As heretofore pointed out, Schedule 1 included checking deposits, time certificates, demand certificates of deposit, and none other. The contract provided that the Commercial National should assume the deposit account of the First National in the sum of $240,873.73, and the obligation for money borrowed or notes rediscounted with the Federal Reserve Bank or any other banks in the sum of $34,997, and also the note of the First National to the Commercial National in the sum of $75,000. The contract further provided that the First National should sell and assign unto R. D. Kaster, as trustee, for the benefit of the parties (eleven stockholders of the First National) who had signed, a guaranty of $25,000, which represented the par value of the capital stock in the First National held by the guarantors. The contract further provided that the Commercial National should appoint a committee to appraise the assets of the old bank, which was done, and the committee appraised the assets, which appraisal received the approval of the directors of the Commercial National. The contract further provided that the assets of the First National other than those set out in Schedule A should be assigned to R. D. Kaster, as trustee for the stockholders of the First National Bank who had signed the guaranty for $25,000. It was then specified to what purposes the property held in trust should be applied. Other provisions are found in the said contract, but we do not deem them essential for the determination of the case at bar.

On or about July 30, 1927, the First National Bank of Corydon ceased to do a banking business. The Commercial National Bank was organized with a capital of $40,000 and $10,000 surplus, which was put in the Commercial National Bank by stockholders, part of whom were the stockholders of the old First National Bank of Corydon, and the balance by others, who had no relation to the old bank. Thereafter, a receiver for the First National Bank was appointed by the comptroller of the currency of the United States. Notice was published as provided by law (Title 12, United States Code Annotated, Section 193) in which notice the time for filing claims terminated December 1, 1927. No claim was ever filed by the plaintiffs in this cause with the receiver of the First National Bank, and before this action was commenced, the receiver of the First National was duly discharged, and the charter of the First National Bank was surrendered and canceled.

It further appears that W. J. Alexander, as administrator of the estate of his brother John Alexander, deceased, filed his final report October 9, 1917; and in this final report, *inter alia*, it is recited that there was nothing to be distributed among the heirs. Attached to this final report as a receipt was the check in question, for $780. This final report was approved, and the administrator W. J. Alexander was discharged. No claim was filed by these plaintiffs in that estate. There is no evidence that, at the time the check for $780 was executed, the administrator had any funds belonging to him as administrator of the estate of John Alexander, deceased, in the First National Bank of Corydon. All that does appear in the evidence is that W. J. Alexander, administrator, drew a check March 2, 1916, on the First National Bank, payable to the order of the First National Bank, which check recited: "Credit of Rebecca Short, Mary Carr, and George Alexander." The only investigation that plaintiffs ever made was on November 5, 1928, when they found this paid check or receipt among the probate papers that had been there for eleven years, and after the estate of their brother John Alexander had long since been closed, and the administrator himself had died.

The appellant's contention is that the deposit in question was a trust fund. Even though the so-called credit which appeared on the books of the defendant First National Bank on

or about March 2, 1916, is viewed as a trust fund, that fact would not entitle the plaintiffs to recover. That bank was organized under the laws of the United States, and was under the supervision of the comptroller of the currency. Upon its insolvency, the comptroller of currency would administer its affairs. The First National Bank did become insolvent, eleven years after the date of the check in question. The assets of the bank had been sold to the Commercial National, whereupon the comptroller of currency, through a receiver, took charge of the First National. True it is that, before it went into the hands of a receiver, certain of its assets were taken over by the Commercial National Bank of Corydon, under a contract as heretofore recited. The First National became and is a defunct banking institution, with no assets. The Federal receiver had distributed same, if any, and had been discharged, when the instant case was commenced.

It is the law that a creditor of a national bank who has not sued and secured judgment must submit his claim to the comptroller for allowance. *National Bank of the Commonwealth v. Mechanics' Nat. Bank*, 94 U. S. 437 (24 L. Ed. 176); *Denton v. Baker*. (C. C. A. 9th Circuit), 35 C. C. A. 187 (79 Fed. 189). It may be broadly stated that, under the weight of authority, a creditor cannot be excused for failure to present his claim, regardless of the reasons therefor, and cannot be relieved of the consequences of his negligence unless he is granted indulgence by some statutory provision. The claim was not established in the manner provided by law, as against the receiver of the First National.

The plaintiffs' claim was, in the first instance, against the First National Bank of Corydon. The plaintiffs slept on their rights, and whether it was the sleep of ignorance or the sleep of negligence, it makes no difference.

Lastly, it must be remembered that there was a contract between the Commercial National Bank and the First National Bank of Corydon, whereby the Commercial National bought certain assets and assumed the liabilities of record (July 30, 1927), of the First National Bank. At the time of the execution of this contract, there was no record on the books of the First National showing that there was anything due to the plaintiff-appellants as depositors, or in any other way. The account had

been closed. The First National had the right to bargain as it did with the Commercial National, and the Commercial National had the right to specify in the contract the liabilities it would assume to pay. The contract by and between the two banks did specify the liabilities assumed, and the trust deposit of the plaintiffs was not included in the schedule of liabilities attached to the signed contract. The First National was a going institution at that time, although it probably knew that it was facing insolvency. Obviously, in the instant case, the plaintiff-appellants are not entitled to participate in property advanced by the stockholders and guarantors of the Commercial National Bank. The purpose of the appointment of a receiver was to discover in a legal way whether or not the First National Bank had any creditors other than those that had taken care of the contract of purchase.

The trial court ruled correctly the merits of this controversy, and the decree entered is—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.